Frank **LEONE** et al., Appellants,

v.

**MOBIL OIL CORPORATION.**

No. 74–1892.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 5, 1975.

Decided Nov. 28, 1975.

George H. Cohen, Washington, D. C., with whom Robert M. Weinberg, Washington, D. C., was on the brief for appellants.

Stanley R. Strauss, Washington, D. C., for appellee.

Before TAMM, ROBINSON and MacKINNON, Circuit Judges.

TAMM, Circuit Judge:

The Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 *et seq.* (hereinafter OSHA), allows a representative authorized by the employees to accompany an inspector during the walkaround inspection of the workplace. This case presents the issue of whether the employee representative is entitled to pay by the employer for the walkaround time under the provisions of OSHA or the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (hereinafter FLSA). The trial court, giving due deference to a ruling by the Secretary of Labor that pay is not required under either act, found in favor of the employer. We affirm.

The four plaintiffs in this case are Mobil Oil Corporation employees who participated in a walkaround inspection of the Mobil refinery at Paulsboro, New Jersey during the autumn of 1971. The inspection, which occurred in several stages, was the result of a complaint filed by Local 8–831 of the Oil Workers Union, pursuant to 29 U.S.C. § 657(f)(1).[1] The Union, of which plaintiffs were members, represented about four-fifths of the employers at the refinery. As a result of this inspection Mobil was cited for three "serious" and 90 "non-serious" violations.

Plaintiff employees each participated in some phase of the walkaround inspection on the plant property during their regular working hours. Although Mobil paid them for the time spent in the inspection prior to October 25, 1971, they received no pay for inspection time after that date. In contrast, Mobil's management representatives who participated in the inspection were paid for the entire time. At the time of the inspections, the existing collective bargaining agreement with Mobil specified wages, paid holidays, and pay for jury duty, military registration examination, and excused absences; it did not, however, contain any provisions referring to wages for employees participating in OSHA inspections. The agreement did include a three-step grievance procedure for disputes as to the interpretation of or alleged violations of the agreement, as well as a no-strike clause and an arbitration procedure for unresolved disputes. Plaintiffs made no attempt to use the grievance procedure because they felt that the dispute over inspection pay was not covered because it did not involve a contract term, working condition, or disciplinary action.

In November of 1971, the Union filed a complaint against Mobil with the Secretary of Labor alleging that failure to pay the employee representatives for their inspection time violated OSHA's proscription against discriminatory treatment of employees who exercise their

---

1. 29 U.S.C. § 657(f)(1) provides in pertinent part:

 Any employees or representative of employees who believe that a violation of a safety or health standard exists that threatens physical harm, or that an imminent danger exists, may request an inspection by giving notice to the Secretary or his authorized representative of such violation or danger. . . . If upon receipt of such notification the Secretary determines there are reasonable grounds to believe that such violation or danger exists, he shall make a special inspection in accordance with the provisions of this section as soon as practicable .

OSHA rights.[2] The claim was rejected by the Assistant Secretary of Labor because "failure to compensate for walkaround time is not discriminatory *per se* under section 11(c)" J.A. at 69. *See also* 29 C.F.R. § 1977.21(a) (1975). Analogizing the situation to testifying before the National Labor Relations Board during working hours, the Assistant Secretary determined that the employer may not prevent the exercise of such rights but need not pay for the activity as working time under FLSA, *citing Electronic Research Co.,* 190 NLRB No. 143.

Following rejection of this claim, plaintiffs brought suit in the District Court for the District of Columbia invoking the court's jurisdiction under the statute granting jurisdiction of suits for violation of labor contracts, section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a) (1970). District Court Judge John Lewis Smith, Jr. granted Mobil's motion for summary judgment because participation in the inspection was voluntary and primarily for the benefit of employees and thus not compensable under the "hours worked" test of the FLSA. *Leone v. Mobil Oil Corp.,* 377 F.Supp. 1302, 1304 (D.D.C.1974). The trial court accepted the Assistant Secretary's decision as the correct interpretation of OSHA and FLSA. *Id.*

The plaintiffs then appealed to this court, alleging *inter alia* that the OSHA statutory scheme envisions placing the economic burden of industrial safety on employers and that the non-frivolous nature of employees' participation in the inspection benefits the employer in meeting his statutory duty to provide safe working conditions; employee participation thus merits compensation under FLSA. Plaintiff-appellants urge that, since these inspections constitute "hours worked" under FLSA, employees are en-titled to pay at the contract wage. In contrast, Mobil argues that the walkaround time is noncompensable and that, in any event, the suit is improper because the employees failed to exhaust the grievance procedure specified in the collective bargaining agreement.

Although this second issue—the exhaustion of dispute procedures—was not resolved by the district court, we find a consideration of this issue imperative. If, as Mobil contends, the action is barred by the plaintiffs' failure to follow grievance procedure, we need not address the issue of pay for OSHA inspection participation.

 Mobil's claim raises two distinct issues: (1) whether an individual employee seeking to assert his statutory rights under FLSA must exhaust grievance procedure before seeking judicial resolution, and (2) whether the specific terms of the relevant collective bargaining agreement in this case control the dispute. Because we answer the first general question in the negative, we need not resolve the second issue.

A brief sketch of the historical development of judicial deference to grievance procedures agreed upon by the parties via collective bargaining is helpful in illuminating the unsettled question presented by this case. Beginning with the so-called *Steelworkers Trilogy* in 1960, *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), the United States Supreme Court has greatly strengthened the effect of grievance and arbitration clauses like those which appear in the 1971 Mobil/United

---

**2.** 29 U.S.C. § 660(c)(1) provides:

No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.

Oil Workers agreement.[3] In both *American Manufacturing* and *Warrior & Gulf Navigation, supra,* the Court enforced the arbitration clauses in suits brought under section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a) (1970), and stressed the importance of using the arbitration process to avoid industrial strife. Although the Court recognized that the question of arbitrability is one for the court, it articulated a broad standard for judicial determination of arbitrability:

> An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

363 U.S. at 582–83, 80 S.Ct. at 1353 (footnote omitted). The Court has expanded this presumption of arbitrability to cover even safety disputes. *Gateway Coal Co. v. Mine Workers,* 414 U.S. 368, 379, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974).

Consistent with its generous support of arbitration procedures, the Court also has favored the use of grievance procedures that precede the arbitral requirement. In *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), the Court required an individual employee to exhaust the prescribed grievance procedure before

---

**3.** The relevant sections of the collective bargaining agreement provide:

Article XVI
GRIEVANCE PROCEDURE

1. Disputes as to the interpretation of or an alleged violation of the application of the terms of this Agreement, or as to working conditions, or any disciplinary action taken by the Company shall be considered a grievance and shall be handled in the manner and sequence outlined below.

2. No grievance shall be considered under the terms of this procedure unless it is presented to the employee's foreman within thirty (30) calendar days of the time when this employee first had knowledge of such grievance.

3. Nothing in this Agreement shall prevent any employee or group of employees from presenting a grievance directly to the Company on their own behalf, provided that a representative of the Union is given the opportunity to be present at the time of adjustment of such grievance. As provided in the provisions of the Labor Management Relations Act of 1947, as amended, no such adjustment shall be made which is inconsistent with the terms of this Agreement.

. . . . .

Article XVII
ARBITRATION

1. Disputes only as to the interpretation of or an alleged violation of the application of the terms and provisions of this Agreement, as written, shall first be processed through the Grievance Procedure as provided in Article XVI hereto. The dispute, if not settled by the Grievance Procedure, shall be submitted to arbitration on the written demand of either party, provided such written demand is made within thirty (30) days from the date of the disposition referred to in Section 4, Step 3, of Article XVI, and so long as the grievance arises during the effective term of the agreement or any extension thereof.

2. In the event either the Company or the Union elects to arbitrate as herein provided, the arbitration proceeding shall be conducted under rules and regulations then obtaining of the American Arbitration Association. The decision of the arbitrator shall be final and binding on the Company and the Union as to the application and interpretation of the terms and provisions of this Agreement for the full term of this Agreement or any extension thereof.

The fees and expenses of the arbitrator and other expenses mutually incurred shall be shared equally by the Company and the Union; all other expenses shall be borne by the party incurring them.

3. Nothing in this Agreement shall prevent either Company or Union, if Union then be the accredited collective bargaining representative of employees covered by this Agreement, from applying, during the term of this Agreement, to a court of competent jurisdiction for the relief to which such party may be entitled in accordance with the law applicable in these premises including, but not limited to, application for specific performance of a valid and subsisting labor agreement or any terms and conditions thereof, injunction against present or prospective violation of such agreement, damages as may be proved and properly allowed, etc., and without prejudice in any way to each and every present and future right of the other party under applicable law, rules and regulations and this Agreement.

bringing suit for breach of contract. *Id.* at 652, 85 S.Ct. 614. Relying on Congressional preference for using grievance procedures to stabilize labor relations, the Court required an employee to use the dispute procedure even though he was seeking severance pay after the plant had closed.

This expansion of the rule favoring use of grievance procedures to individual employees, as opposed to unions and employers, was soon limited in two decisions. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), held that an employee could sue directly for wrongful discharge without exhausting grievance procedures if the union had breached its duty of fair representation by wrongfully refusing to process the grievance. *Id.* at 186, 87 S.Ct. 903. Later the Court held that exhaustion was not required before a seaman could assert judicially his claim for wages under the statute regulating pay of maritime workers, 46 U.S.C. § 596 (1970).[4] *U. S. Bulk Carriers, Inc. v. Arguelles,* 400 U.S. 351, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971). Although the Court there reaffirmed the value of grievance and arbitration procedures, it refused to hold that section 301 replaced the individual seaman's statutory claim.

> What Congress has plainly granted we hesitate to deny. Since the history of § 301 is silent on the abrogation of existing statutory remedies of seamen in the maritime field, we construe it to provide only an optional remedy to them. We would require much more to hold that § 301 reflects a philosophy of legal compulsion that overrides the explicit judicial remedy provided by 46 U.S.C. § 596.

*Id.* at 357–58, 91 S.Ct. at 413.

In 1972, the Court faced a related question:

whether, similarly, employees may sue in court to recover overtime allegedly withheld in violation of the Fair Labor Standards Act, if their complaint of alleged statutory violation is also subject to resolution under grievance and arbitration provisions of a collective-bargaining agreement.

*Iowa Beef Packers, Inc. v. Thompson,* 405 U.S. 228, 229, 92 S.Ct. 859, 860, 31 L.Ed.2d 165 (1972). The Iowa Supreme Court, relying on the rationale in *Arguelles,* had held that, because FLSA antedated section 301 and provided for court proceedings and penalties, it should, like the seamen's wage act, give the employee an option to sue as well as to use the grievance procedure. 185 N.W.2d 738, 742 (Iowa 1971). The Supreme Court had granted certiorari to resolve the issue. After listening to oral argument, however, the Court noted the narrow scope of the arbitration procedures which applied only to grievances "pertaining to a violation of the Agreement." The Court thus dismissed the writ of certiorari as improvidently granted because the narrowly drawn agreement did not require resolution of the exhaustion issue. *Id.* 405 U.S. at 230, 92 S.Ct. 859. Justice Douglas dissented from the dismissal, arguing that the dispute was arbitrable in light of the presumption favoring liberal construction of arbitration clauses, and that *Arguelles,* "which kept the courthouse door open, would seem to control this case." *Id.* at 231, 92 S.Ct. at 861.

The question which the Court declined to answer in *Iowa Beef* is at issue in the case *sub judice.* Like the Iowa court in *Thompson,* we must decide whether exhaustion is required when the grievance pertains not to an alleged violation of the bargaining agreement, but to an alleged violation of FLSA. We agree with the Iowa Supreme Court that *Arguelles*

---

**4.** This statute provides in pertinent part:

Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court . . . ..

applies and that an individual employee may assert his statutory remedy in court without first exhausting a grievance procedure that may be applicable. *See also Schimerowski v. Iowa Beef Packers, Inc.,* 196 N.W.2d 551, 557 (Iowa 1972); Note, 18 Wayne L.Rev. 1465, 1478 (1972).

In addition to the rationale of *Arguelles,* the recent decision of the Supreme Court in *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), supports this limitation on the exhaustion doctrine. In that case, the Court faced a different problem: the effect of an arbitration award on a Title VII discrimination suit. The Court held that the arbitration award may be admitted as evidence but that the trial judge must rule on the discrimination claim de novo. *Id.* at 60, 94 S.Ct. 1011. Although enforceability of the arbitration award, rather than of the arbitration and grievance procedure, was at issue, we find the Court's discussion of the question apposite to this case.

In evaluating a Title VII suit filed subsequent to an arbitrator's finding that no discrimination had occurred, the Court noted the broad sweep of anti-discrimination legislation, the lack of waiver of Title VII claims by an employer exercising his rights to use grievance procedures specified in the collective bargaining agreement, and the conflicts faced by an arbitrator where the terms of the agreement conflict with federal legislation.

The Court's discussion of the statutory goals of Title VII is reminiscent of the Iowa court's description of FLSA in *Thompson:*

We doubt that the general Congressional intent favoring arbitration can stand against the specific Congressional intent which is manifest in the Fair Labor Standards Act provisions giving employees strong and detailed rights in court. We think Congress intended that workmen should have free access to the courts in FLSA cases. We are the more persuaded of that view by the broad Congressional policy expressed in § 2 of FLSA, 29 U.S.C.A. § 202. There the objectives of the act are set forth, and those objectives encompass more than simply wage relief for employees; they include broad economic considerations—improvement in commerce among the states.

185 N.W.2d at 742. The pervasive statutory schemes of both Title VII and FLSA evidence Congressional intent that these rights may be judicially enforced.

The Court in *Alexander* also rejected a theory of waiver or election of remedies. Writing for the Court, Justice Powell stated, "The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums." 415 U.S. at 50, 94 S.Ct. at 1020. This theory is equally applicable to FLSA. In addition, just as the right to be free from discrimination cannot be waived by collective bargaining, *id.* at 51, 94 S.Ct. 1011, the principles of FLSA apply despite contrary custom or agreement. 29 C.F.R. § 785.8 (1974). *See also Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 704, 65 S.Ct. 895, 89 L.Ed. 1296, *rehearing denied,* 325 U.S. 893, 65 S.Ct. 1189, 89 L.Ed. 2005 (1945). Since the right itself may not be waived through collective bargaining, failure to exclude FLSA claims specifically from the grievance procedure should not be seen as a waiver of the individual's option to select judicial determination of his claim.

A further comparison between arbitration of Title VII and FLSA disputes compels us to reject an exhaustion requirement. As pointed out by the Court in *Alexander,* "the arbitrator's task is to effectuate the intent of the parties. His source of authority is the collective-bargaining agreement . . . [and he] has no general authority to invoke public laws that conflict with the bargain between the parties." 415 U.S. at 53, 94 S.Ct. at 1022. Because his authority is

limited by the terms of the agreement, he cannot be the final arbiter of rights created by statute.

In the area of FLSA claims, arbitrators recognize that an arbitration award cannot make legal an action which is violative of the act. *See, e.g.*, C. Updegraff, Arbitration and Labor Relations 122 (1970). They do not agree, however, that this conflict necessarily requires an award consistent with FLSA principles.[5] In light of this disagreement as to the role of the arbitrator, a rule demanding an individual employee to exhaust the grievance procedure or forego judicial redress is wasteful of time and resources, prejudicial to the statutory right asserted, and inconsistent with the underlying rationale of *Alexander*. Mere incantation of grievance procedure terms cannot serve automatically to make claims of statutory rights impervious to judicial scrutiny specifically granted within the statute.

The arguments made by Mobil do not convince us that the specific terms of the agreement require a different result. We cannot accept Mobil's Janus-like theory which, on one side countenances nothing less than total exhaustion of grievance and arbitration procedures by the individual employee while the other face protests that, even if the arbitration procedure is permissive rather than mandatory, the option extends only to the union and the employer. Appellee's Br. at 41–43. Mobil would have us hold that the employees face the strictures of the grievance procedures without being able to benefit from any exits open to union and employer. This "heads-I-win, tails-you-lose" argument serves neither logic nor justice.

For these reasons, we hold that an employee may bring suit for an alleged violation of the FLSA without first attempting to vindicate that right through the grievance procedure specified in the bargaining agreement. Because we reach this result, we do not find it necessary to determine whether the specific terms of the grievance procedure cover this dispute under the presumption-of-arbitrability standard established in the *Steelworkers Trilogy, supra.*

■ Having determined that plaintiffs' claims are not barred by their failure to follow grievance procedures, we turn to the substantive issue of this case: whether an employee who participates in a walkaround inspection is entitled to pay for that time under the provisions of either OSHA or FLSA.

Plaintiffs do not claim that either the labor agreement or the language of OSHA requires payment; rather, they argue that the policies of OSHA require that the time be considered "hours worked," and thus compensable, under FLSA. They then allege that, since the time is compensable, the wages are established not by FLSA minimum wage standards but by the general wages prescribed in the collective bargaining agreement which is silent on the precise question. This circuitous logic fails to convince us for two reasons. First, we find no indication that Congress intended that the employees' right to participate in an inspection should necessarily result in increased costs to the employer.[6] Furthermore, even if legisla-

---

5. *See, e.g.*, F. & E. Elkouri, How Arbitration Works (1973) which states:

> Arbitrators have *disagreed* as to whether the agreement or the Fair Labor Standards Act should control where they conflict. Arbitrator Emanuel Stein has held that where the statute is clear, the agreement must be construed and applied in a manner consistent with the statute. However, where a party argued that an adverse decision would conflict with the Fair Labor Standards Act, Arbitrator Harold S. Burr declared that it is the contract language upon which he must focus and rule.

*Id.* at 331 (footnotes omitted).

6. The costs of the OSHA inspection programs are estimated at "a lower bound guesstimate" of $200 per inspection for employer and $250–300 for OSHA. The estimate, which appears in a cost-benefit analysis of OSHA inspections, suggests that the total cost may often reach $1500 rather than the conservative $500 cost suggested. Oi, *On the Economics of Industrial Safety*, 38 Law & Contemp.Prob. 669, 698 & n. 80 (1974).

tive history does not expressly preclude the interplay between OSHA and FLSA, the tests enunciated by the Supreme Court to resolve issues of worktime do not require a finding that inspection time is compensable under FLSA alone.

Plaintiffs point to no legislative history directly supporting their view that employee representatives should be paid for accompanying OSHA inspectors on the walkaround tour. The provision granting employee representatives participation rights first appeared in the committee version of Senate Bill 2193.[7] Sponsor of the bill, Mr. Williams of New Jersey, explained in debate the importance of this provision:

> This section reflects a fair and practical resolution of the conflicting viewpoint of employers who fear that an unlimited right of employees to accompany inspectors could lead to disruption of production operations and, the viewpoint of employees who urgently believe they need their representatives to participate and assist in the inspection which is so important to their continued protection on their job.
>
> I think this is an important point. Certainly no one knows better than the working man what the conditions are, where the failures are, where the hazards are, and particularly where there are safety hazards. The opportunity to have the working man himself and a representative of other working men accompanying inspectors is manifestly wise and fair, and in arriving at the objectives of this legislation I think it is one of the key provisions of the bill presented to the Senate by the committee.

116 Cong.Rec. 37340 (1970). The Senate adopted this provision rather than a substitute bill which would have granted employees the right to accompany the inspector only when the employer or his representative participated in the inspection. *Cf.* S. 4404, 91st Cong., 2d Sess. § 9(b) (1970); *see also* Amendment No. 1056 to S. 2193, 116 Cong.Rec. 36530 (1970). The House version retained the language allowing employee representation only when the employer accompanied the inspector, H.R. 16785, 91st Cong., 2d Sess. § 9(b) (1970), but the Senate language prevailed in the conference bill which was adopted by both houses and approved by the President, 116 Cong.Rec. 41756, 42208 (1970). Although this legislative history reflects Congressional desire to provide employee input into safety inspections, it sheds no light on the issue of compensation for such participation.

Furthermore, the other provisions of OSHA do not reveal any consideration by Congress of the pay issue. The statute specifically considers the effect of OSHA on prior health and safety standards, 29 U.S.C. § 653(b)(2), and on workmen's compensation laws, *id.* at

---

**7.** Section 657(e) of Title 29 uses the exact language of the committee bill:

> Subject to regulations issued by the Secretary, a representative of the employer and a representative authorized by his employees shall be given an opportunity to accompany the Secretary or his authorized representative during the physical inspection of any workplace under subsection (a) of this section for the purpose of aiding such inspection. Where there is no authorized employee representative, the Secretary or his authorized representative shall consult with a reasonable number of employees concerning matters of health and safety in the workplace.

S.Rep.No.91–1282, 91st Cong., 2d Sess. 49 (1969).

During the hearings on S. 2193, the subcommittee heard testimony indicating the need for a provision allowing employees to point out safety hazards to the inspector. As indicated by Mr. Anthony Semeraro, a factory safety chairman:

> I would like to have the inspector speak to the men on the job. The companies are covering too much, and I just hope we could expose some of the shenanigans going on.

*Hearings on S. 2193 and S. 2788 Before the Subcomm. on Labor of the Senate Comm. on Labor and Public Welfare*, 91st Cong., 1st & 2d Sess., pt. 1, at 812 (1970). *See also id.* at 796–97, 921–22, 940, 944.

§ 653(b)(4); no mention, however, of FLSA appears. There is only a general direction that the Secretary shall report to Congress within three years in regard to duplication or conflicts with other federal laws. *Id.* at § 653(b)(3).

This lack of acknowledgment of the pay issue may indicate that Congress did not consider the problem at the time OSHA was adopted. Whether Congress deliberately or unconsciously omitted provisions for walkaround pay for employees, however, the question remains one properly reserved to the legislative process. We are particularly unwilling to supply this policy decision where Congress has evidenced a continuing interest in the legislation[8] and where the statute provides a method of bringing such problems before Congress through the efforts of the Secretary of Labor.

Although many arguments could be addressed to Congress advocating that compensation be granted, *see, e.g.,* Comment, *OSHA: Unresolved Issues and Potential Problems,* 41 Geo.Wash.L.Rev. 309, 309–16 (1972), these policy arguments cannot serve as a basis for judicial supplementation of the expansive statutory scheme. Plaintiffs argue that failure to require employers to compensate their employees for walkaround time will discourage employee participation and thus frustrate expressed Congressional policy. Contrary to this fear, a recent labor union study designed to measure employee participation in OSHA inspections revealed that the Secretary's ruling that walkaround time was not compensable had not significantly affected either compensation or participation among the employees surveyed. The study revealed that 93% were paid by the employers and 4% were paid by the union; the remaining 3% included employees who were paid one-half of their wages by both union and employer or who participated during their own time. Zalusky, *The Worker Views the Enforcement of Safety Laws,* 26 Labor L.J. 224, 230 (1975). This study is consistent with a statement of a Labor Department spokesman that most employers are paying for walkaround time, BNA Labor Law Reporter: LRX 489, as expressly allowed by the regulations: "It should be emphasized that an employer is in no way precluded by the Act from making voluntary agreements to pay employees for time spent by them while participating in walkaround inspections." 29 C.F.R. § 1977.21(b) (1975). The survey also points out that the problem is alleviated in large measure because the inspection often follows a grievance and is therefore sometimes covered under the terms of collective bargaining agreements which provide pay for employee time spent investigating grievances. Zalusky, *supra* at 230. The employees' opportunity to protect themselves through providing for compensation via bargaining agreements is another reason for refusing to inject judicial policy-making into the legislative scheme.

Although OSHA does not itself provide for compensation nor seem to require that result in order to effectuate the policy of section 657(e), its terms do not expressly prevent application of FLSA to time spent by employees in OSHA inspections.[9] Examination of relevant FLSA cases, however, convinces us that the Secretary of Labor and Judge Smith correctly ruled that FLSA does not require payment for inspection time.

The term "hours worked" appears in FLSA only in the definition section and

---

8. Within a year and a half of OSHA's effective date, Congress conducted three oversight hearings on various aspects of the bill. Moran, *An Oversight of Penalty Increases and Adjudicatory Functions Under the Occupational Safety and Health Act of 1970,* 33 Fed.B.J. 138 (1974).

9. Consideration of a claim under FLSA standards, independent of the fact that the claim arises under another statutory right, is not novel. *See, e.g., Bowman v. Texas Educ. Foundation, Inc.,* 454 F.2d 1097, 1101 (5th Cir. 1972), which contrasted the provision of FLSA with those of the Economic Opportunity Act of 1964. We do not, however, suggest by our analysis of FLSA standards any view as to plaintiffs' argument that if FLSA applied, contract wages would be the proper measure of compensation.

refers specifically to time spent changing clothes or washing at the beginning or end of the work day. 29 U.S.C. § 203(o) (1970). No general definition appears. The concept of "hours worked" or "working time," therefore, has necessarily evolved through caselaw to delineate which employee activities are covered for purposes of minimum wage and maximum hours, except in the limited area of transportation to and from the worksite, e.g., the Portal-to-Portal Pay Act of 1947, 29 U.S.C. § 251 et seq. (1970). See 29 C.F.R. §§ 785.6, –.7 (1974).

Early Supreme Court cases interpreting FLSA developed the worktime standard. In Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123, the Court established a three-prong test for determining hours worked: (1) the activity must require physical exertion; (2) the exertion must be controlled by the employer; and (3) the exertion must be pursued necessarily and primarily for the benefit of the employer. 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949, rehearing denied, 322 U.S. 771, 64 S.Ct. 1257, 88 L.Ed. 1596 (1944). See also Jewell Ridge Corp. v. Local No. 6167, 325 U.S. 161, 65 S.Ct. 1063, 89 L.Ed. 1534, rehearing denied, 325 U.S. 897, 65 S.Ct. 1550, 89 L.Ed. 2007 (1945). Under this test, time spent by iron and bituminous coal miners in transportation from the mine entrance to the working face was held compensable under FLSA. This test was limited to its last two requirements in Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944), rehearing denied, 323 U.S. 818, 65 S.Ct. 427, 89 L.Ed. 649 (1945), which pointed out that the Court's finding of physical or mental exertion was reasonable in light of the facts of the Tennessee Coal case, but that the phrase was "not intended as a limitation on the Act, and [has] no necessary application to other states of facts." Id. 323 U.S. at 132–33, 65 S.Ct. at 168. Using this restricted test, the Court thus required compensation for time spent by firefighters while on call in the fire hall. Id., see also Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). It also held that time spent walking to the worksite after punching in was worktime for purposes of FLSA coverage because the walking was compelled by the necessities of the employer's business. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 691, 66 S.Ct. 1187, 90 L.Ed. 1515, rehearing denied, 329 U.S. 822, 67 S.Ct. 25, 91 L.Ed. 699 (1946). Cf. Blum v. Great Lakes Carbon Corp., 418 F.2d 283 (5th Cir. 1969), cert. denied, 397 U.S. 1040, 90 S.Ct. 1361, 25 L.Ed.2d 651 (1970), considering idle time prior to punching out.

Applying the FLSA standards, Judge Smith ruled in the instant case that employees participating in the inspection fail to meet this worktime standard because their actions are voluntary and not primarily for the benefit of the employer. He relied particularly on the finding of noncompensation by the Secretary of Labor. Plaintiffs, urging us to reverse this holding, allege that employee participation benefits the employer in his satisfaction of a statutory duty and that while the employees' actions are voluntary in the sense of their willingness to participate, they are not voluntary in the sense of allowing unfettered discretion to pursue personal objectives unrelated to the specific task of the OSHA inspection. Furthermore, they challenge the trial court's deference to the Secretary's ruling which, they allege, is inconsistent with other FLSA regulations. We begin our discussion by examining the weight to which a ruling by the Secretary of Labor is entitled.

■ Opinions by the head of an administrative agency, "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." Skidmore v. Swift & Co., supra, 323 at 140, 65 S.Ct. at 164. See also Mabee v. White Plains Publishing Co., 327 U.S. 178, 179–80, 66 S.Ct. 511, 90 L.Ed. 607 (1946); Roland Electrical Co. v. Walling, 326 U.S. 657, 676, 66 S.Ct. 413, 90 L.Ed. 383 (1946); National Auto-

*matic Laundry & Cleaning Council v. Shultz,* 143 U.S.App.D.C. 274, 443 F.2d 689, 701–02 (1971); this deference is tempered, however, when the ruling is inconsistent with Congressional policy, *Morton v. Ruiz,* 415 U.S. 199, 237, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1947), or with other rulings, *Federal Maritime Board v. Isbrandtsen Co., Inc.,* 356 U.S. 481, 500, 78 S.Ct. 851, 2 L.Ed.2d 926 (1958).

In the case before us, the Secretary's ruling does not contravene the legislative aim of allowing employee input into OSHA inspections, as we discussed *supra.* Furthermore, the rule is consistent with other FLSA regulations which allow an employer and union to determine wage issues by the bargaining process. *See, e.g.,* 29 C.F.R. § 785.42 (1974), leaving resolution of the pay issue for time spent in adjusting grievances to collective bargaining or custom.[10] Judge Smith, therefore, properly considered the Secretary's ruling in deciding this case.

Even if there had been no such ruling by the Department of Labor, we agree that FLSA principles mandate a no-compensation rule. In applying the *Tennessee Coal* test that the activity be controlled by the employer and primarily for his benefit, we find that employees accompanying an OSHA inspector fail to satisfy either requirement. It is true, as plaintiffs state, that furthering industrial safety benefits the employer. This benefit, however, does not require a finding that the activity is *primarily* for the employer's benefit. Many activities which may increase employee effectiveness and thus benefit the employer are not worktime activities under FLSA. *See, e.g.* 29 C.F.R. § 785.19 (1974) (30 minute or longer meal time not worktime even if employee not allowed to leave the premises); § 785.31 (independent training of employee outside of

working hours not worktime even if directly related to his job); § 785.17 (on-call time off the premises that allows employee to use the time for his own purposes also not worktime).

Even more significant is the failure of the employees to meet the criterion of employer control. As pointed out in an idle-time case, *Blum v. Great Lakes Carbon Corp., supra,* the element of employer control is crucial where time away from scheduled work assignments is not imposed by the employer and when its purpose is to accommodate employee interests. 418 F.2d at 287–88 & n.6. During an OSHA inspection, the employer exercises no control over the choice of an employee representative or the forms and extent of his participation. The facts of this case reveal instead an adversarial context in which the employer representatives disputed both the expertise and value of the participation of one of the employees. Record on Appeal, Affidavits of William A. Denges and Douglas J. Gammie Accompanying Defendant's Cross-Motion for Summary Judgment. To allow the employer to select or limit the participation of the employee representative would contradict the Congressional purpose of section 657(e), but denominating this lack of employer direction "control" for purposes of FLSA standards would be anomalous as well as incognizant of industrial realities. Whatever indirect benefits employers may reap from OSHA inspections, the imminent threat of citations and fines does not encourage employers to applaud or approve the actions of employees who are pointing out violations to the OSHA inspector. It is undoubtedly this possibility of immediate conflict between employer and employee interests which led Congress to protect employees who exercise OSHA participation rights from discriminatory treatment under section

---

**10.** This regulation provides:

> Time spent in adjusting grievances between an employer and employees during the time the employees are required to be on the premises is hours worked, but *in the event a bona fide union is involved the coun-* *ting of such time will, as a matter of enforcement policy, be left to the process of collective bargaining or to the custom or practice under the collective bargaining agreement* (emphasis added).

660(c)(1). Without proof of direct benefit and employer control, the principles of FLSA do not, even apart from the provisions of OSHA, require compensation.

For these reasons we hold that, although no exhaustion of grievance procedures bars plaintiffs' claims, the employees are not entitled to compensation for time spent accompanying an OSHA inspector pursuant to their section 657(e) rights. The judgment of the trial court is therefore affirmed.

*So ordered.*