**CHAMBER OF COMMERCE OF the UNITED STATES OF AMERICA, Plaintiff,**

v.

**OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION et al., Defendants.**

**Civ. A. No. 77–1842.**

United States District Court, District of Columbia.

Oct. 17, 1978.

Stephen A. Bokat, Stanley T. Kaleczyc, Washington, D. C., for plaintiff.

Wm. Briggs, Asst. U. S. Atty., John A. Bryson, U. S. Dept. of Labor, Washington, D. C., for defendants.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

This matter is before the Court on cross-motions for summary judgment. The question presented to the Court for review is whether the Occupational Safety and Health Administration (hereinafter referred to as "OSHA") of the Department of Labor exceeded its authority in amending an interpretive guideline regarding payment of employees for normal work time spent accompanying OSHA representatives conducting workplace inspections, including time spent participating in opening and closing conferences.[1]

The necessity of employee participation in safety inspections has been recognized by Congress. 29 U.S.C. § 657(e) (1975).[2] The Department of Labor, as the Federal agency responsible for industrial safety, has sought to implement this Congressional policy and to protect the statutory rights of employees by declaring that the failure of

an employer to compensate employees for time spent on walkaround inspections and in opening and closing conferences is *per se* discriminatory in violation of 29 U.S.C. § 660(c)(1).[3]

Plaintiff Chamber of Commerce seeks a declaration that defendants' interpretation of the antidiscrimination provisions of the Occupational Safety and Health Act of 1970 (hereinafter referred to as "the Act"), set forth at 29 C.F.R. § 1977.21 (1977), and 42 Fed.Reg. 47344 (1977), is contrary to law and procedurally defective and also requests injunctive relief barring enforcement actions brought pursuant to the Secretary's interpretation. Plaintiff has also petitioned the Court for a ruling invalidating the Department of Labor's interpretation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, (hereinafter referred to as "FLSA"), requiring compensation of employees for time spent on OSHA inspections.

Plaintiff asserts that the decision in *Leone v. Mobil Oil Corp.*, 377 F.Supp. 1302 (D.D.C.1974), *aff'd*, 173 U.S.App.D.C. 204, 523 F.2d 1153 (1975) is dispositive of the issues presented to this Court. The Court has carefully considered the *Leone* decision

1. OSHA inspectors are required to hold an "opening conference" with the employer prior to commencing the physical inspection of the workplace. At the opening conference, the OSHA representative outlines the scope of the inspection about to take place. 29 C.F.R. § 1903.7(a); OSHA Field Operations Manual, Chapter V, Section D(2).

Upon completion of an inspection, OSHA representatives are instructed to conduct a "closing conference" at which time the employer is advised of any apparent safety and health violations disclosed by the inspection. At this time the OSHA inspector is provided with any additional information relevant to the inspection. *See* 29 C.F.R. § 1903.7(f); OSHA Field Operations Manual, Chapter V, Section D(7).

2. 29 U.S.C. § 657(e) provides:

Subject to regulations issued by the Secretary, a representative of the employer and a representative authorized by his employees shall be given an opportunity to accompany the Secretary or his authorized representative during the physical inspection of any workplace under subsection (a) of this section for the purpose of aiding such inspection. Where

there is no authorized employee representative, the Secretary or his authorized representative shall consult with a reasonable number of employees concerning matters of health and safety in the workplace.

3. 29 U.S.C. § 660(c) provides in relevant part:

(1) No person shall discharge *or in any manner* discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter. (emphasis added).

(2) If upon investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person. . . .

These enforcement provisions are commonly known as the "antidiscrimination" mechanism of the Occupational Safety and Health Act of 1970.

and is of the opinion that the Court of Appeals did not intend to foreclose OSHA modification of its own interpretive rule regarding the antidiscrimination provisions of the Act based upon further study and evolving expertise.

The Court of Appeals in *Leone* defined the issue before it to be "whether an employee who participates in a walkaround inspection is entitled to pay for that time under the provisions of either OSHA or FLSA." *Leone* 173 U.S.App.D.C. at 210, 523 F.2d at 1159. The Court of Appeals implicitly recognized that the Occupational Safety and Health Act, apart from the FLSA, could require compensation to employees participating in a walkaround inspection. *Upon failing to reach a conclusion after examination of 29 U.S.C. § 657(e) and its legislative history*, the Court then addressed plaintiffs' argument "that the policies of OSHA require that the time be considered 'hours worked,' and thus compensable, under FLSA." 173 U.S.App.D.C. at 210, 523 F.2d at 1159. In rejecting this argument, the Court of Appeals noted that the District Court (Smith, J.) had relied upon a ruling by the Secretary of Labor that walkarounds need not be compensated under the FLSA and held that Judge Smith had properly deferred to the Secretary's ruling. While the Court of Appeals indicated by way of *dicta* that it would have independently reached the same result as the Secretary on the FLSA issue, the opinion offers no guidance for the present situation where the Secretary has determined that FLSA principles require compensation for OSHA walkarounds. Moreover, the Court of Appeals did not have before it a case brought under 29 U.S.C. § 660(c) and the *Leone* decision cannot be interpreted as removing an employer's failure to pay for walkaround time from the coverage of Section 660(c).

In any event, appropriate judicial respect for an agency's interpretation of a remedial statutory scheme which it administers requires a full and fresh inquiry into the validity of the interpretive rule here at issue.

Examination of Sections 657(e) and 660(c) of the Act and review of the sparse legislative history concerning these sections does not compel any inexorable conclusion. The Court notes, however, that the Occupational Safety and Health Act of 1970 was enacted "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions . . . ." 29 U.S.C. § 651(b). This Congressional intent is implemented through the development of safety and health awareness among employers and employees, the promulgation of safety standards and through the establishment of an enforcement program which calls for workplace inspections directed toward the discovery and elimination of safety and health hazards. *See* 29 U.S.C. § 651(b). As the Senate Report on the legislation makes clear, employee participation in the physical inspection of workplaces is considered both highly desirable and necessary. *See* Committee Print, Legislative History of the Occupational Safety and Health Act of 1970, 92nd Cong. 1st Sess. (June 1971) at 151 (hereinafter referred to as "Legislative History"). In order to protect and encourage employee participation in the statutory scheme, Congress enacted an extremely broad antidiscrimination provision which prohibits any person from discriminating *in any manner* against employees because of the exercise of any rights afforded by the Act. 29 U.S.C. § 660(c)(1); Legislative History at 857.

It is apparent from the words of the statute and from the legislative history that Congress did not address the question of who was to bear the economic burden of employee participation in workplace inspections. Congress only concerned itself with the necessary and desirable extent of employee participation in the enforcement process. *See* Legislative History at 430; *Leone*, 173 U.S.App.D.C. at 210–212, 523 F.2d at 1159–1161. It is also clear that Congress viewed employee participation, particularly in the enforcement area, as an essential aspect of its program for industrial safety and health. 29 U.S.C. §§ 655(b)(1), (6) and (7), 657(f)(1), 659(c) and

660(a). As the Court of Appeals noted in *Leone*, this "policy decision" regarding employee compensation for participation in walkaround inspections is committed to Congressional discretion and to the expertise and informed judgment of the Secretary of Labor. This Court feels compelled to abide by the Secretary's interpretive ruling. As observed by the Court of Appeals:

> Opinions by the head of an administrative agency, 'while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.' (citations omitted); this deference is tempered, however, when the ruling is inconsistent with Congressional policy (citations omitted).

*Leone*, 173 U.S.App.D.C. at 213, 523 F.2d at 1162–1163. *See also Chisholm v. F. C. C.*, 176 U.S.App.D.C. 1, 538 F.2d 349 (1976), *cert. denied*, 429 U.S. 890, 97 S.Ct. 247, 50 L.Ed.2d 173 (1976); *Marshall v. Daniel Construction Co., Inc.*, 563 F.2d 707 (5th Cir. 1977).

The Secretary's ruling is in no way inconsistent with the Occupational Safety and Health Act or any other expression of Congressional policy.[4] To the contrary, requiring walkaround pay is plainly adapted to the effectuation of employee participatory rights afforded by Section 657(e).[5] One ground for the Secretary's decision is the realization "that management representatives are often paid for the time spent accompanying OSHA representatives during an inspection while the employees participating in the same activity are not." 42 Fed.Reg. 47345 (1977). This unrebutted finding by OSHA, coupled with the Department of Labor's determination that walka-round inspection time constitutes "hours worked" under the FLSA, effectively refutes any argument that non-payment occurs only because the employee is not performing compensable work during a walkaround inspection and leads to the undeniable conclusion that employees who are not paid for walkaround time are being discriminated against within the meaning of Section 660(c). *See e. g.*, plaintiff's exhibits E, F, G and H.

Moreover, the Secretary has administered the Act for seven years, and based on this experience has determined that "employee participation and cooperation at the inspection stage has proved to be critically important to enforcement efforts under the Act." 42 Fed.Reg. 47344 (1977). The Secretary has also observed that "loss of pay involved [in a walkaround] would clearly constitute a significant economic disincentive to employees' exercising their express statutory right under section 8(a) to accompany a compliance officer during an inspection." *Id.* at 47344–47345. Accordingly, the Court cannot disagree with the Secretary's conclusion that refusal to compensate employees for time spent in a walkaround "has a twofold and related impact: It is inherently destructive of the employees' right to participate in the walkaround and, consequently, impedes the free flow of information between employees and representatives of the Secretary which is so critical to effective enforcement of the Act." *Id.* at 47344. *See NLRB v. Great Dane Trailers, Inc.*, 388 U.S. 26, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967); *NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 83 S.Ct. 1139, 10 L.Ed.2d 308 (1963).

The Court also upholds the validity of defendants' statutory interpretation which

---

4. Plaintiff also claims that the interpretive ruling contravenes the Federal labor policy by intruding on the collective bargaining process. Congress has not, however, indicated that the issue of employee compensation for time spent participating in the physical inspection of a workplace is to be left to collective bargaining. The Court of Appeals in *Leone* was unwilling "to inject judicial policy making into the legislative scheme." *Leone* at 1161. This Court is also of the opinion that the judiciary should leave questions of labor policy in the hands of Congress and the Department of Labor.

5. It should be noted that although the Secretary has previously held that failure to compensate employees for participation in a walkaround inspection is not *per se*, discriminatory, the Secretary has always adhered to the view that failure to pay "will require close scrutiny of the facts in each instance." 29 C.F.R. § 1977.21 (1976) and 38 Fed.Reg. 2681 (1973).

**14**

includes opening and closing conferences as part of the "physical inspection" of workplaces within the meaning of Section 657(e). Opening conferences are held, *inter alia*, so that the nature, purpose and scope of the inspection may be discussed. 29 C.F.R. § 1903.7(a). As previously indicated, employee input at this stage is clearly a valuable aid in determining the most effective scope and direction of the inspection. This view is consistent with the entire statutory scheme which attempts to maximize employee participation. *E. g.,* 29 U.S.C. § 657(f)(2).

A closing conference is the concluding aspect of a physical inspection where the results of the walkaround are summarized and is therefore an integral part of an inspection. *See* 29 C.F.R. § 1903; OSHA *Field Operations Manual*, Chapter V, Section D(7). Again, employees may effectively participate in the closing conference during which identifiable hazards are discussed.

The Court recognizes that neither the statute nor regulations, which are binding upon OSHA, *see Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959), expressly grant employees participatory rights in opening or closing conferences; employees are not, however, denied the right to participate. The Court finds that the Secretary's interpretation regarding opening and closing conferences is reasonably calculated to effectuate the remedial legislative purposes of the Occupational Safety and Health Act and must therefore be upheld.

■ OSHA's interpretive rule is also challenged for failure to comply with the notice and comment provisions of the Administrative Procedure Act. Interpretive rules and general statements of policy, contrasted with the implementation of independent legal requirements promulgated pursuant to validly delegated legislative authority are, however, specifically exempted from the notice and comment provisions of the Administrative Procedure Act. 5 U.S.C. § 553(b)(3)(A) and (d)(2); *Gibson Wine Co. v. Snyder*, 90 U.S.App.D.C. 135,

194 F.2d 329 (1952). Accordingly, the Court concludes that the defendants are not barred from reconsidering its own interpretive rules and that a new interpretation regarding discriminatory conduct may be implemented without affording interested parties prior notice and the opportunity to be heard.

Upon consideration of defendants' motion for summary judgment, plaintiff's cross-motion for summary judgment and the entire record, the Court finds that there are no material facts in dispute and that defendants are entitled to summary judgment as a matter of law on the issue of discriminatory conduct within the meaning of 29 U.S.C. § 660(c).