**MAGMA COPPER COMPANY,**
**Petitioner,**

v.

**SECRETARY OF LABOR, Mine Safety and Health Administration, and Federal Mine Safety and Health Review Commission, Respondents,**

**United Steelworkers of America, AFL–CIO–CLC, Intervenor.**

No. 79–7687.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 18, 1980.

Decided May 18, 1981.

Rehearing Denied June 22, 1981.

N. Douglas Grimwood, Twitty, Sievwright & Mills, Phoenix, Ariz., for petitioner.

Gary L. Sasso, Cynthia Attwood, Washington, D. C., for respondents.

Before DUNIWAY and TRASK, Circuit Judges, and JAMESON,* District Judge.

DUNIWAY, Circuit Judge:

The issue in this case is whether § 103(f) of the Federal Mine Safety and Health Act of 1977, 30 U.S.C. § 813(f), requires that, when an inspection of a mine is conducted by more than one inspector, each of whom acts separately and inspects a different part of the mine, one representative of miners may accompany *each* inspector without loss of pay if he is an employee of the mine operator. The Federal Mine Safety and Health Review Commission held that the Act does so provide, and we affirm.

### I. *Background.*

The facts are not in dispute. Magma Copper Company ("Magma") operates a copper mine and mill in San Manuel, Arizona. The milling complex is large, including a receiving bin, a mine crusher, a mill crusher, a concentrator building, a molybdenum plant and a filter plant. One of these buildings is three stories tall and a quarter of a mile long, and the complex as a whole is spread out over an area of several miles. The milling complex is a "mine" subject to the Act. 30 U.S.C. § 802(h).

On July 26, 1978, two inspectors from the Department of Labor arrived at the milling complex in order to continue an "entire mine" or "regular" inspection under § 813(a) of the Act. The inspectors planned to split up, each of them inspecting a different part of the mill, and they asked company officials to provide them with two miners' representatives to participate in the inspection. The company agreed to assign two miners' representatives to the inspection, but took the position that § 813(f) of the Act only requires that one miners' representative receive walkaround pay. Unwilling to ask a miners' representative to suffer loss of a day's wages, the inspectors went forward with the inspection with only one miners' representative. As they had planned, the inspectors formed two inspection parties and examined different—and geographically distant—sections of the milling complex.

Because of Magma's refusal to pay a second miners' representative for time spent accompanying an inspector, the inspectors issued a citation to Magma under § 814(a). The citation was followed by a withdrawal order under § 814(b). Magma contested the citation and withdrawal order, and the Administrative Law Judge, agreeing with Magma's interpretation of the Act, vacated the citation and order. The Federal Mine Safety and Health Review Commission ("Commission") reversed, holding that "one miners' representative in each inspection party must be paid for time spent accompanying an inspector ... engaged in an inspection of the mine 'in its entirety'...." The Commission reinstated the citation and withdrawal order and Magma petitioned this court for review.

### II. *The Merits.*

Section 813(f) of the Act provides in pertinent part as follows:

> Subject to regulations issued by the Secretary, a representative of the operator and a representative authorized by his miners shall be given an opportunity to accompany the Secretary or his authorized representative during the physical inspection of any ... mine made pursuant to the provisions of subsection (a) of this section, for the purpose of aiding such inspection and to participate in pre- or post-inspection conferences held at the mine.... Such representative of miners who is also an employee of the operator shall suffer no loss of pay during the period of his participation in the inspection made under this subsection. To the

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

extent that the Secretary or authorized representative of the Secretary determines that more than one representative from each party would further aid in the inspection, he can permit each party to have an equal number of such additional representatives. However, only one such representative of miners who is an employee of the operator shall be entitled to suffer no loss of pay during the period of such participation under the provisions of this subsection....

The question here is whether the limitation in the final sentence quoted above— "However, only one such representative of miners ... shall be entitled to suffer no loss of pay ..."—means that when one inspector or one inspection party is accompanied by more than one miners' representative only one representative is entitled to walkaround pay, or whether it means that in all circumstances, even where there is more than one inspection party, only one miner shall be paid.

In an Interpretative Bulletin issued in April, 1978, 43 Fed.Reg. 17546 (April 25, 1978), some months before the inspection of the Magma facility, the Department of Labor stated its view that the limiting sentence applies only to the situation where one inspector or one inspection party is accompanied by more than one miners' representative. The Department reasoned that this is the natural way to interpret the limitation; the limiting sentence "directly follows a provision authorizing an inspector to allow more than one representative of miners to accompany him." *Id.* at 17549. The Department also said that to extend the limitation to a case in which "it is necessary to send several inspectors in order to most effectively or efficiently conduct inspection activity" *Id.* would be both illogical and contrary to the policies of the Act:

... the occasions when several inspectors are at a mine frequently include inspections of larger mines or mines with special problems requiring concentrated attention. It is precisely in those mines that participation by miners' representatives will ordinarily be most helpful.

Moreover, the total time required to complete an inspection of a mine would be shorter if more inspectors are involved and they are inspecting different areas the mine. Thus ... the total outlay in wages ... would be approximately the same, whether there is a single inspector accompanied by a single paid representative of miners for a longer period of time or several inspectors each accompanied by a paid representative of miners for a proportionately shorter period of time. *Id.*

Finally, the Department said that to restrict the right to walkaround pay because of the Department's decision to send an inspection team of several inspectors rather than a single inspector for a greater period of time, would be to sacrifice "the fundamental purpose" of § 813(f)—"to encourage participation by miners in inspections through their representatives." *Id.* at 17548.

The Interpretative Bulletin states further that in situations where there are several inspectors who are proceeding together as a group on inspection activity, the limitation on the number of paid representatives would apply. "Only one representative accompanying the single group of inspectors would be entitled to suffer no loss of pay." *Id.* at 17549. Thus the bulletin restricts the ruling to cases in which there is more than one inspector, each carrying out a separate part of the inspection, so that the cost to the operator will usually be no more than if there were but one inspector who did the whole job, accompanied by but one representative of miners.

The Commission concurred in the Department's interpretation of the section in light of the policies of the Act. We agree.

█  At the outset, we note that the Department's interpretative bulletin "is entitled to deference unless it can be said not to be a reasoned and supportable interpretation of the Act." *Whirlpool Corp. v. Marshall*, 1980, 445 U.S. 1, 11, 100 S.Ct. 883, 890, 63 L.Ed.2d 154. *Montana Power Co. v. EPA*, 9 Cir., 1979, 608 F.2d 334, 344–345, 350; *Cf. Irvington Moore, et al. v. Occupational Safety and Health Review Commis-*

*sion*, 9 Cir., 1977, 556 F.2d 431, 434 ("Since in this case the Secretary's interpretation of his own regulations has been affirmed by the Commission, this interpretation must be accorded substantial weight.") We note also that "safety legislation is to be liberally construed to effectuate the congressional purpose," *Whirlpool Corp., supra*, 445 U.S. at 13, 100 S.Ct. at 891, and that "in cases involving conflict between rules of construction, the courts will strive to adopt that construction which best effectuates the legislative purpose." *Reich v. Webb*, 9 Cir., 1964, 336 F.2d 153, 157. *See Brennan v. Keyser*, 9 Cir., 1974, 507 F.2d 472, 477 ("Exceptions to humanitarian and remedial legislation must be narrowly construed.").

The language of the statute supports the Department's construction of it. It is not disputed that an inspector is the "authorized representative" of the Secretary. If we substitute "inspector" for "Secretary or his authorized representative," the statute, § 813(f), will read:

> ... a representative authorized by [the operator's] miners shall be given an opportunity to accompany the [inspector] during the ... inspection.... Such representative of miners who is also an employee of the operator shall suffer no loss of pay.... To the extent that the [inspector] determines that more than one representative of each party would further aid the inspection, he can permit each party to have an equal number of such additional representatives. However, only one such representative of miners ... shall be entitled to suffer no loss of pay....

Throughout the section the reference to the representative of the Secretary, i. e., the inspector, is in the singular. This language would support a construction that a representative of the miners is to accompany *each* inspector, and is not to suffer loss of pay. The sentence that says that "only one such representative ... shall be entitled to suffer no loss of pay" refers back, by use of the phrase "such representative," to the preceding sentence, which provides that "the inspector may determine that more

than one representative ... would ... aid the inspection," and authorizes "him," i. e., the inspector, to permit each party to have an equal number of representatives.

■ Magma does not argue that the Secretary may not send more than one inspector to inspect, or that, having sent more than one, he must have all of them inspect together, rather than have each inspect a different part of the mine. If the Secretary does send more than one, § 813(f), read literally, will apply to each of them. This is the way that the bulletin applies the section, except in one respect. If more than one inspector do the inspection together, they are treated like one inspector for the purpose of § 813(f). It can be persuasively argued that this limitation gives more relief to an operator than the section requires, but the limitation is eminently sensible.

Magma argues that § 813(f) is ambiguous, and that the legislative history supports or even requires a construction of the "However ..." sentence to forbid requiring walkaround pay to more than one employee during any inspection of the entire mine.

We agree with the Commission that the legislative history of § 813(f) does not directly refer to the precise issue that we face here. The only extended discussion of walkaround pay occurred in a colloquy between Senators Helms and Javits. Senator Helms opposed the provision because of the expense to mine operators: "Some Companies, I am advised, have reported that there are as many as 5 inspectors in their mines at all times, and that ... blitz inspections sometimes require 20 or more inspectors." Subcommittee of Labor of the Senate Committee on Human Resources, 95th Cong., 2d Sess., *Legislative History of the Federal Mine Safety and Health Act of 1977* (Committee Print July 1979) (hereinafter Legislative History) at 1053.

Speaking in response, Senator Javits argued that miner participation in inspections is essential to increased miner awareness of safety problems and that such participation could not be expected unless the miners were paid for their time. At the conclusion of these remarks he stated: "This bill only

requires one miner to be compensated for the time he spends in accompanying the inspector. Other miners and company representatives may accompany inspectors and participate in the inspection. They may or may not be paid by the operator, but we insist that one miner who accompanies the inspector should be paid, and there should be a provision that at least one miner should have that opportunity." *Id.* at 1055.

Magma argues that Senator Javits' concluding comments indicate his understanding that the provision of walkaround pay is limited to one miner regardless of the number of inspectors. It is by no means clear that that is so. The colloquy is equivocal. Senator Javits' comments can be understood to refer only to the situation where more than one miner accompanies a single inspector. Moreover, it is significant that Senator Javits did not flatly contradict Senator Helms' apparent understanding that where several inspectors are present, the measure provides that one representative of miners may accompany each inspector without loss of pay. As we have seen, the Interpretative Bulletin does not go so far. At best, this exchange leaves the issue in doubt.

The legislative history and the statute itself could not be clearer, however, as to the purposes of the legislation in general and of the walkaround pay provision in particular. As Senator Javits explained, the walkaround pay provision seeks to assure that miners will exercise their right to participate in inspections. The right of participation, in turn, attempts to increase miners' awareness of safety problems as well as to provide inspectors with a guide familiar with working conditions in the mine. Legislative History at 1054. *See* S.Rep.No.95–181, 95th Cong., 1st Sess. at 28, reprinted in Legislative History at 616. The importance of miner participation in safety is repeatedly emphasized throughout the legislative history of the Act—"If our national mine safety and health program is to be truly effective, miners will have to play an active part in the enforcement of the Act." *See* S.Rep.No.95–181, *supra*, at 35, reprinted in Legislative History at 623.

The walkaround pay provision and the participation right are both aimed at the protection of the health and safety of miners—the single overriding purpose of the legislation. The Senate Report explains that need for the legislation was demonstrated by a series of mining disasters, in particular the Scotia disaster in which 23 miners and 3 federal inspectors died from the explosion of accumulated methane gas. The committee staff report on the Scotia disaster found that one-man inspections of that mine had been ineffective. Indeed, the report found "evidence in the record to indicate that Scotia personnel, rather routinely, engaged in deceptive practices with respect to one-man ... inspections. While an inspector was checking for adequate ventilation, for example, in one section of the mine, Scotia personnel were robbing air from another section to assure that the section being inspected was receiving adequate air supplies." Staff of House Comm. on Education and Labor, Subcomm. on Labor Standards, 94th Cong., 2d Sess., *Scotia Coal Mine Disaster* (Comm. Print 1976) at 28–29.

Magma invites us to adopt an interpretation of the statute that would force the Department to choose between effective simultaneous inspections by several inspectors and the participation of miners in inspections. Under Magma's interpretation, in order to assure that one miner accompanies an inspector throughout the entire mine, the Department must risk the sort of hoodwinking that occurred, with tragic consequences, in the Scotia mine. The clear outcome of such an interpretation is a reduction in safety when safety is the purpose of the legislation. And if safety is compromised on the one hand by Magma's interpretation, there is, on the other hand, simply no benefit gained by anyone. We agree with the Department's Interpretative Bulletin that the mine operator can be put to little if any additional expense by a comparatively quick inspection by several inspectors each accompanied by one paid miners' representative as opposed to a far lengthier inspection by one inspector and one paid

miner. In short, the interpretation urged by Magma makes little sense while it contravenes the basic purpose of the statute.

Finally, Magma's reliance on *Leone v. Mobil Oil Corporation*, D.C.Cir., 1975, 523 F.2d 1153, is misplaced. In that case the court held that neither the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 *et seq.*, nor the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, requires payment for the walkaround time of an employee representative. Unlike those two statutes, however, the Federal Mine Safety and Health Act specifically provides for walkaround pay. The statutes are not comparable and the *Leone* case is, therefore, simply irrelevant to the issue here.

We affirm the decision of the Commission.