**MILLER MINING COMPANY, INC., Petitioner,**

v.

**FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION; Secretary of Labor, Mine Safety and Health Administration, Respondents.**

No. 82–7603.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 11, 1983.

Decided Aug. 16, 1983.

488

Debra L. Feuer, Arlington, Va., for respondents.

Michael Miller, Los Angeles, Cal., for petitioner.

Before GOODWIN and ANDERSON, Circuit Judges, and REAL,* District Judge.

J. BLAINE ANDERSON, Circuit Judge:

Miller Mining Company, Inc. ("MMC") was cited by the Mine Safety and Health Administration ("MSHA") for violation of a withdrawal order issued under section 103(k) of the Federal Mine Safety and Health Act of 1977 ("Act"), 30 U.S.C. § 813(k) (Supp. V, 1981). MMC appeals the decision of the Federal Mine Safety and Health Review Commission ("Commission") upholding the citation. We affirm.

I. BACKGROUND

On August 8, 1980, a fire broke out in the main mine tunnel of the Miller Mine in Altaville, California. Officials of MMC, the owner, evacuated the mine, sealed the portal, and summoned MSHA inspectors. Upon arrival, an inspector issued a withdrawal order pursuant to section 103(k) of the Act, 30 U.S.C. § 813(k) (Supp. V, 1981). The order required all personnel to be withdrawn from the mine, and gave control of the recovery efforts to MSHA.

* The Honorable Manuel L. Real, Chief Judge, United States District Court for the Central District of California, sitting by designation.

The next day, August 9, the order was modified to provide that no person should enter the mine portal without direct authorization from MSHA's district manager, and that any modification or alteration of the fan ventilation system must be monitored by the MSHA inspector.

The order was modified a second time on September 2, incorporating a letter sent to MMC by MSHA's district manager. The letter warned that MSHA would not allow re-entry unless four conditions relating to training, procedure, equipment, and rescue were met. The letter stated that failure to comply would be considered a willful and knowing violation of the Act.

By the first of September, re-entry efforts had dragged on for nearly a month, and restless local citizens were volunteering (and threatening) their services to MMC as nighttime repairmen. MMC spurned all of these offers. A new re-entry plan was started September 2, but major complications developed immediately. The ventilation tube was blocked deep inside the tunnel, which was still thick with deadly smoke and gas. After attempts to unblock the tube had been halted for the evening, and MSHA inspectors were safely in bed, MMC officials ordered all personnel away from the mine portal, including the company guard who had been stationed there since the fire broke out.

No one knows for sure what happened that dark night, but when MSHA inspectors arrived early on September 3, the ventila- tion fan was working splendidly. A mine rescue team entered the mine that afternoon where they found fresh evidence that someone had entered the mine the previous night and repaired the ventilation tube, thereby allowing the fan to work. Because this surreptitious entry was contrary to the withdrawal order and subjected the entrant(s) to grave dangers, MSHA inspectors issued a citation, pursuant to section 104(a) of the Act, 30 U.S.C. § 814(a) (Supp. V, 1981).

MMC appealed the citation, and an administrative law judge upheld MSHA's action. The Commission adopted the decision of the administrative law judge. MMC appeals to this court, pursuant to section 106(a) of the Act, 30 U.S.C. § 816(a) (Supp. V, 1981), alleging the withdrawal order as issued and modified was ambiguous, confusing, and in violation of the Act. MMC also argues MSHA failed to prove a violation.

## II. DISCUSSION

### A. The Withdrawal Order

■ We first address MMC's question of statutory construction. The crux of petitioner's claim is that under "the plain meaning of the Act," MSHA cannot order the persons enumerated in section 104(c)[1] to be withdrawn from the mine under a section 103(k)[2] withdrawal order. A plain reading of the Act, however, dispenses with this contention.

---

1. Section 104(c) provides as follows:

    The following persons shall not be required to be withdrawn from, or prohibited from entering, any area of the coal or other mine subject to an order *issued under this section:*
    (1) any person whose presence in such area is necessary, in the judgment of the operator or an authorized representative of the Secretary, to eliminate the condition described in the order;
    (2) any public official whose official duties require him to enter such area;
    (3) any representative of the miners in such mine who is, in the judgment of the operator or an authorized representative of the Secretary, qualified to make such mine examinations or who is accompanied by such a person and whose presence in such area is necessary for the investigation of the conditions described in the order; and
    (4) any consultant to any of the foregoing. [Emphasis added]

2. Section 103(k) states:

    "In the event of any accident occurring in a coal or other mine, an authorized representative of the Secretary, when present, may issue such orders as he deems appropriate to insure the safety of any person in the coal or other mine, and the operator of such mine shall obtain the approval of such representative, in consultation with appropriate State representatives, when feasible, of any plan to recover any person in such mine or to recover the coal or other mine or return affected areas of such mine to normal."

Section 103(k) gives MSHA plenary power to make *post-accident* orders for the protection and safety of all persons. In this case, the inspector issued an order that *everyone* be withdrawn from the mine pursuant to section 103(k).

Section 104 is the citation provision of the Act. Section 104(a) gives inspectors the power to cite violations of the Act *and* order abatement of the violation within a set time period. Section 104(b) then provides MSHA with the power to reinspect the previously cited mine and, if the violation has not been abated as ordered, issue a withdrawal order effective until abatement is complete. Section 104(c), the crucial section for our purposes, exempts certain necessary persons from operation of such a section 104(b) withdrawal order, and *only* from such an order. Nowhere does section 104(c) mention any other section. Section 104(c) expressly relates *only* to section 104.

Other sections of the Act, in order to effectuate their respective purposes, specifically incorporate the section 104(c) exemptions. For example, section 107, which deals with "imminent dangers," allows operators to retain section 104(c) persons on site in order to abate the danger before it escalates into an accident. Section 103(k), on the other hand, deals with post-accident situations where the agency has complete control in order to preserve life in the face of an existing hazard. As such, it does not incorporate section 104(c).

Similarly, the purpose of section 104(b) logically requires inclusion of section 104(c) exempted persons. While spurring a dilatory operator into compliance with a section 104(b) withdrawal order, a skeleton crew of 104(c) persons can remain to carry out the abatement.

For these reasons, MSHA's section 103(k) order can, and did, include the withdrawal of section 104(c) persons.

■ MMC also claims that the pre-printed form used to issue the withdrawal order was ambiguous, leading petitioner to believe section 104(c) persons were exempt. The form in question is used for all orders and citations issued by MSHA. Predictably, it is largely boiler plate. The face of the form provides space for enumeration and explanation. The back of the form lists several sections of the Act and explains their applications. The form is well written and, if the issuing inspector properly indicates on the face of the form the nature of the action being taken, as was done here, there is no ambiguity.

MMC further argues that MSHA's intervention during the crisis, including twice modifying the original order, left petitioner confused as to what was permissible and what was not. We find no merit in this argument.

■ The modifications MSHA made were reasonably tailored to the situation and directed at allowing MMC flexibility in remedying the situation while, at the same time, protecting lives in the dangerous circumstances. Further, any confusion on the part of MMC could have been quickly and easily cleared up through consultation with one of the MSHA inspectors on site during the entire crisis.

B. The Violation

MMC, claiming MSHA has not carried its burden of proving that the person(s) entering the mine did not comply with the conditions of the modified order, argues the administrative law judge erred in finding petitioner negligently breached a duty. This court will uphold the factual findings of the administrative law judge if there is substantial evidence to support them. 30 U.S.C. § 816(a)(1) (Supp. V, 1981).

We think it is clear that the second modified order imposed a duty upon MMC to ensure *no one* entered the mine without complying with the provisions of the order. The order listed four qualifications by which MMC could certify their own re-entry team without prior approval of MSHA.

■ Petitioner's argument disintegrates with the allocation of the burden of proof. Contrary to MMC's claim, MSHA had the burden of putting forth a *prima facie* case of violation. The ultimate burden of per-

suasion then rested with petitioner to show compliance. *Old Ben Coal Corp. v. Interior Bd. of Mine Op. App.,* 523 F.2d 25, 39 (7th Cir.1975) (petition for rehearing). A *prima facie* case of violation was shown by MSHA. The agency put forth uncontradicted evidence that the mine had been entered, and the ventilation system altered, early in the morning of September 3, 1980. MMC, although admitting someone entered the mine, denied any knowledge of the identity of the entrant(s). Petitioner could not then fulfill their obligation of proving compliance. We, therefore, conclude there is substantial evidence to affirm the decision below, albeit mostly circumstantial.

It is of no consequence that MMC may have been the innocent victim of an unrelated party's desire, for whatever reason, to get the mine back in production. The Fifth Circuit recently recognized the inherent danger of mines, and held any failure to comply with a regulation under the Act would result in a citation to the operator. Imposing a kind of strict liability on employers to ensure worker safety, the court pointed out there are no exceptions for fault, only harsher penalties for willful violations. *Allied Products Co. v. Federal Mine Safety and Health Review Commission,* 666 F.2d 890, 893–894 (5th Cir.1982).

## III.  CONCLUSION

A plain reading of the Act gives MSHA inspectors the authority to order withdrawal of *all* persons from a mine by issuing a section 103(k) withdrawal order. The pre-printed form used by MSHA to issue orders and citations is acceptably clear, so long as the issuing inspector indicates on the face of the form what action he is taking and which section of the Act he is relying upon. This was done in the present case. Further, there was no ambiguity generated by the modifications of the original order in this case that could not have been easily clarified.

Finally, we find substantial evidence to support the decision of the administrative law judge. MSHA put on a *prima facie*

case of violation which petitioner could not refute.

Accordingly, the decision of the district court is

AFFIRMED.