848 F.2d 195
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
WILMOT MINING COMPANY, an Ohio Business Corporation, Petitioner,
v.
SECRETARY OF LABOR, Mine Safety and Health Administration
(MSHA), and Federal Mine Safety and Health Review
Commission (FMSHRC), Respondents.
 No. 87-3480.
 United States Court of Appeals, Sixth Circuit.
 May 17, 1988.
 
 Before MILBURN and BOGGS, Circuit Judges, and ANN ALDRICH, District Judge*.
 PER CURIAM.
 
 
 1
 Petitioner Wilmot Mining Company petitions for review of an order of the Federal Mine Safety and Health Review Commission ("FMSHRC") finding Wilmot guilty of safety violations and assessing penalties. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.
 
 I.
 
 2
 Wilmot Mining Company operates a strip mine in Stark County, Ohio. At all times relevant to this proceeding, Wilmot employed fourteen employees. John Schrock was employed by Wilmot as Mine Superintendent. He had fifty years of mining experience, approximately fifteen of them with Wilmot.
 
 
 3
 On May 24, 1984, Schrock informed Harold Bain, the General Manager of the mine, that the starter on the vehicle Schrock normally operated in the mine was not working. Bain then agreed to take the starter to be repaired and advised Schrock that, in the meantime, he could use the 910 Caterpillar front-end loader available in the garage. The 910 Caterpillar was equipped with a rollover protective structure (ROPS).
 
 
 4
 For some inexplicable reason, Schrock declined to use the 910 Caterpillar. Rather, he obtained a Terex front-end loader from the reclamation area to use while his regular equipment was being repaired. The Terex did not have a ROPS.
 
 
 5
 On the morning of May 25, 1984, Schrock assisted Glenn Shoup in loading coal in the pit. Schrock operated the Terex on that day both in the pit and in the surrounding mine area.
 
 
 6
 There is some dispute as to whether Harold Bain ever saw Schrock operating the Terex in the pit. Bain consistently testified before the Administrative Law Judge ("ALJ") that he never saw Schrock operating the Terex in the pit. However, E. Ray Marker testified that Bain told him that he had seen Schrock operating the Terex in the pit.
 
 
 7
 On the afternoon of May 25, 1984, Bain observed Schrock planting trees along a road near the pit. At that time, Bain gave Schrock the paychecks to deliver to the miners working in the pit. Parked near Schrock were the Terex and Schrock's company pick-up truck.
 
 
 8
 At approximately 1:45 p.m. on May 25, 1984, Schrock drove the Terex to the equipment parking lot near the entrance to the pit. He spoke with Ralph "Pat" Hoover, a mine mechanic, and told Hoover that he had lost his brakes. Hoover went to get his tools, but when he returned to inspect the brakes, Schrock had left in the Terex.
 
 
 9
 Schrock drove into the pit area, delivered the paychecks, and at approximately 2:00 p.m. started back up the inclined roadway out of the pit. As he was exiting the pit, he stopped approximately 100 feet from the bottom and then began backing down to make room for a descending coal truck. Schrock apparently lost control of the Terex, and it began to roll backwards. It then went off the road and struck the face of a highwall. The vehicle overturned, crushing the cab and fatally injuring Schrock.
 
 
 10
 An investigation led by Mine Safety and Health Administration Inspector Ray Marker commenced approximately two hours after the accident. On May 30, 1984, the Terex was removed from the pit. At that time, the vehicle was checked, and the investigators noted that the master cylinder and auxiliary cylinders for the braking system had low fluid levels. Marker testified that he believed the master cylinder had approximately one-half inch of fluid and the auxiliary brake cylinder had approximately one inch of fluid. He further testified that, to the best of his recollection, both brake cylinders would normally hold three inches of fluid, and that he checked to see if the brake line or wheel cylinder had been damaged or if any kind of hydraulic leak on the braking system had occurred. None was found.
 
 
 11
 Subsequently, the Terex was taken to a flat parking lot where Pat Hoover drove it at a reasonably slow speed and applied the brakes. The Terex did not come to a stop for approximately thirty-six feet after the brakes were applied. Marker testified that this starting and stopping procedure was repeated several times, and it appeared that each time the brakes were applied, less braking effect was noticed.
 
 
 12
 Marker further testified that he cited Wilmot for operating equipment with inadequate brakes because his examination indicated that the brake cylinders in the Terex were low on fluid. Additionally, the fact that the stopping distance was much greater than normal supported his conclusion that the brakes were inadequate.
 
 
 13
 At the hearing, Harold Bain testified that although he was responsible for coordinating the activities of all of the mine superintendents, he considered himself an equal to John Schrock. Bain insisted that on the day of the accident, he did not see Schrock operate the Terex in the pit. He also stated that, in his opinion, the amount of fluid in the brake cylinders was sufficient to cause the vehicle to stop, and that he believed the cause of the brake failure was a blown cylinder.
 
 
 14
 Bain further testified that he never thought Schrock would operate the Terex in the pit. He indicated that he had no authority to discipline Schrock, but that if he had seen Schrock operating the Terex in the pit, he would have attempted to make him stop. He was uncertain whether Schrock would have complied with such a request.[1]
 
 
 15
 Bain testified that he never told Schrock not to use the Terex in the pit. However, in an affidavit filed in the administrative proceedings, the owner of Wilmot Mining Company, Thomas R. Eddie, stated that Bain specifically instructed Schrock not to use the Terex in the pit.
 
 
 16
 After consideration of the evidence, the ALJ concluded that the record supported a finding that Wilmot had violated three safety regulations. First, the ALJ concluded that Wilmot had violated 30 C.F.R. Sec. 48.28(a), which requires operators to give miners annual refresher training. Second, the ALJ concluded that Wilmot had violated 30 C.F.R. Sec. 77.403a(a), which requires that all front-end loaders utilized in surface coal mines must be equipped with rollover protective structures. Finally, the ALJ found that Wilmot violated 30 C.F.R. Sec. 77.1605(b), which requires mobile equipment to be equipped with adequate brakes.
 
 
 17
 The ALJ also assessed civil penalties for these violations. He found that, with respect to the ROPS violation, Bain knew that Schrock was operating a vehicle without a ROPS and that he knew or should have known that Schrock would drive the vehicle in the pit. Because of the gravity of the violation and the gross negligence involved, and upon consideration of the remaining statutory criteria, the ALJ concluded that a $2,000.00 civil penalty was appropriate for this violation.
 
 
 18
 With regard to the violation involving the inadequate brakes, the ALJ concluded that the brakes were defective and that Schrock, a supervisory employee, was grossly negligent when he drove the Terex into the pit with defective brakes. The ALJ concluded that Schrock greatly endangered himself and other persons and that his gross negligence should be imputed to the employer. Accordingly, the ALJ concluded that a penalty of $5,000.00 was appropriate for this violation.
 
 
 19
 The decision of the ALJ was reviewed by the full Commission, which concluded that the record would not support a finding that Wilmot had violated the refresher training regulation. However, it upheld the decision of the ALJ on all other material issues.
 
 
 20
 Wilmot subsequently filed this petition for review. Wilmot argues that the finding of a violation of 30 C.F.R. Sec. 77.1605(b) is not supported by substantial evidence,[2] and further argues that, because the alleged negligence of its supervisors was improperly imputed to it, the penalty assessment was an abuse of discretion. Finally, Wilmot contends that 30 C.F.R. Sec. 77.1605(b) is unconstitutionally vague on its face.
 
 II.
 A.
 
 21
 Wilmot first argues that the decision of the Administrative Law Judge, as upheld by the full Commission, that it violated 30 C.F.R. Sec. 77.1605(b) is not supported by substantial evidence. Our standard of review is limited to determination of whether the Commission's findings of fact are supported by substantial evidence on the record as a whole. 30 U.S.C. Sec. 816. In reviewing the decisions of the Commission, we are mindful of the fact that the Act imposes liability upon operators regardless of fault. See, e.g., Miller Mining Co. v. FMSHRC, 713 F.2d 487 (9th Cir.1983); Allied Products Co. v. FMSHRC, 666 F.2d 890 (5th Cir. Unit B 1982). Thus, the focus of our inquiry is whether there was substantial evidence on the record as a whole to support the conclusion that the Terex operated by John Schrock had inadequate brakes.
 
 
 22
 We hold that there was ample evidence in the record upon which to conclude that the brakes on the Terex were inadequate. Although there may be some question as to whether the inadequacy was caused by low fluid or a blown cylinder, the fact remains that the stopping distance in post-accident tests was thirty-six feet as opposed to the usual five feet. Moreover, the evidence is undisputed that almost immediately before the accident, Schrock told mechanic Pat Hoover that he had lost his brakes. Nevertheless, Schrock proceeded to return to the pit even though he knew his brakes were not working. Under these circumstances, the record clearly supports the Commission's finding of a violation. See Secretary of Labor v. Adams Stone Corp., 7 FMSHRC 692, 710 (1985) (brakes found inadequate because a stopping distance of twenty feet was required when a distance of three to four feet was usually sufficient); Secretary of Labor v. Turner Brothers, Inc., 6 FMSHRC 1482, 1483 (1984) (brake regulation violated because front-end loader had brakes that would not stop or hold the equipment on a small incline). In the present case, testing of the vehicle clearly revealed that the brakes were not adequate to halt the motion of the Terex. Under these circumstances, the finding of a violation is supported by substantial evidence.
 
 B.
 
 23
 Wilmot next argues that the Commission erred in imputing the negligence of its supervisory employees to Wilmot for purposes of penalty assessment. In assessing civil penalties, the Commission is bound by the statutory requirements contained in 30 U.S.C. Sec. 820(i), which provides in relevant part:
 
 
 24
 The Commission shall have authority to assess all civil penalties provided in this chapter. In assessing civil monetary penalties, the Commission shall consider the operator's history of previous violations, the appropriateness of such penalty to the size of the business of the operator charged, whether the operator was negligent, the effect on the operator's ability to continue in business, the gravity of the violation, and the demonstrated good faith of the person charged in attempting to achieve rapid compliance after notification of a violation.
 
 
 25
 In assessing the civil penalties in the present case, the Commission pointed out that "[i]t is well established that the negligent actions of an operator's formen, supervisors, and managers may be imputed to the operator in determining the amount of a civil penalty." J.A. 121; see generally Pocahontas Fuel Company v. Andrus, 590 F.2d 95 (4th Cir.1979) (per curiam). Because Schrock and Bain were supervisory employees, the Commission concluded that their negligence was properly imputable to Wilmot.
 
 
 26
 Wilmot contends that the negligence of its supervisory employees was not properly attributable to it because it has established the so-called "Nacco defense." In Secretary of Labor v. Nacco Mining Company, 3 FMSHRC 848 (1981), the Commission created an exception to the general rule that a supervisor's negligence is properly imputed to the employer. The facts in Nacco indicated that a supervisory employee proceeded alone past the last row of permanent supports under a loose, unsupported mine roof. A large rock fell on him, causing the injuries from which he died. The evidence also established that the foreman warned two miners under his supervision not to follow him, and they remained behind the permanent support.
 
 
 27
 The Commission concluded that under the circumstances presented in Nacco, the negligence of the supervisor in proceeding past the last permanent support should not be imputed to the operator. It concluded that "where, as here, an operator has taken reasonable steps to avoid a particular class of accident and the erring supervisor unforeseeably exposes only himself to risk, it makes little enforcement sense to penalize the operator for 'negligence.' " 4 FMSHRC at 850. However, the Commission also noted that "even an agent's unexpected, unpredictable misconduct may result in a negligence finding where his lack of care exposed others to risk or harm and may not absolve an operator who was otherwise blameworthy in hire, training, general safety procedures, or the accident or dangerous condition in question." Id. at 851.
 
 
 28
 The Commission concluded that Schrock's negligence in operating the Terex without adequate brakes was properly attributable to Wilmot.
 
 
 29
 There is no question that Schrock's conduct was highly negligent; he told a mechanic shortly before the accident that he had "lost" his brakes but proceeded to drive the Terex down a grade into the pit area. Whether Schrock's actions were foreseeable, the judge properly found that his conduct "greatly endangered himself and other persons who might have been injured in the accident involving the Terex." 8 FMSHRC at 515. Therefore, the Nacco defense was not established.
 
 
 30
 J.A. 122.
 
 
 31
 We agree with the Commission's conclusion that Wilmot has failed to establish the Nacco defense with regard to the violation of Sec. 77.1605(b) for inadequate brakes, and that as a consequence Schrock's negligence was appropriately imputed to it for purposes of penalty assessment. Although Wilmot insists that Schrock's conduct was unforeseeable, Nacco clearly provides that foreseeability is unnecessary when the supervisor's negligence exposes others to a risk of harm.
 
 
 32
 In the present case, the ALJ concluded that Schrock's conduct did expose others to such a risk. The evidence established that immediately before the accident the Terex met a truck on the dirt road leading into the pit. Ray Marker testified that although Schrock risked comparably greater harm to himself than to others under these circumstances, the possibility of a collision and resulting harm to others was present. J.A. 40-41. Accordingly, we uphold the Commission's conclusion that the ALJ properly rejected the Nacco defense under these circumstances.
 
 
 33
 We reach a contrary conclusion, however, with regard to imputation of negligence on the ROPS violation. The Commission found that Bain knew or should have known that Schrock would operate the Terex in the pit and that Wilmot had not taken adequate steps to prevent the violation. Accordingly, it upheld the ALJ's conclusion that the Nacco defense had not been established.
 
 
 34
 Our review of the record leads to the conclusion that the findings underlying this determination are not supported by substantial evidence. On the issue of foreseeability, Bain consistently testified that he did not know or have reason to know that Schrock would operate the Terex. He specifically instructed Schrock to use the 910 Caterpillar which was equipped with a ROPS. For some inexplicable reason, Schrock failed to comply with these instructions. Under these circumstances, the record as a whole simply does not support the conclusion that Bain knew Schrock would operate the Terex in the pit.
 
 
 35
 Similarly, the Commission's finding that Wilmot had not taken adequate steps to prevent the violation is not substantially supported by the record. The record indicates that Schrock defied explicit instructions to use the Caterpillar. To Bain's knowledge, the Terex had never been used in the pit, but only at the tipple and for reclamation purposes. Under these circumstances, the finding that Wilmot failed to take adequate protective measures is not supported by substantial evidence.
 
 
 36
 Finally, there is no evidence that the use of a vehicle without a ROPS endangered others. The Secretary conceded this point at oral argument. Consequently, we conclude that the imputation of negligence on the ROPS violation was improper under Nacco, and that the civil assessment cannot be upheld. However, because the Act imposes liability without fault, see Miller Mining, supra, the Commission is entitled to assess a penalty for this violation. But the amount of the penalty for the ROPS violation cannot be enhanced by the imputation of Schrock's negligence to Wilmot. Accordingly, the Commission will be permitted to reconsider the penalty assessment for the violation of 30 C.F.R. Sec. 77.403a(a).[3]
 
 C.
 
 37
 Wilmot's final contention is that 30 C.F.R. Sec. 77.1605(b), which requires mine vehicles to be equipped with adequate brakes, is unconstitutionally vague. Although the precise scope of this challenge is unclear, it appears that Wilmot is mounting a facial challenge to the regulation. See Reply Brief at 10 ("A vagueness challenge to a governmental regulation is a facial attack, and the facts of a particular case are impertinent."). At oral argument, counsel for Wilmot characterized the challenge as a facial one.
 
 
 38
 Assuming that this issue was properly preserved for review, we nevertheless conclude that it is without merit.[4] An entity attempting to have an economic regulation declared void for vagueness is clearly faced with a heavy burden. "It is rare that a statute that does not regulate a fundamental constitutional right would be found to be void-for-vagueness because individuals may have to exercise a high degree of carefulness when engaging in activities that do not relate to fundamental constitutional rights." 2 R. Rotunda, J. Nowak and J. Young, Constitutional Law Sec. 17.8, at 262 n. 22 (1986). As the Supreme Court pointed out in Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489 (1982), a law may "be challenged on its face as unduly vague, in violation of due process. [For such a challenge] [t]o succeed, however, the complainant must demonstrate that the law is impermissibly vague in all of its applications." Id. at 497.
 
 
 39
 The standards for evaluating vagueness were enunciated in Grayned v. City of Rockford, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972):
 
 
 40
 "Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications" (footnotes omitted).
 
 
 41
 The standard should not, of course, be mechanically applied. The degree of vagueness that the Constitution tolerates--as well as the relative importance of fair notice and fair enforcement--depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process.
 
 
 42
 Id. at 498 (footnotes omitted, emphasis supplied). See also Fleming v. United States Department of Agriculture, 713 F.2d 179 (6th Cir.1983) (discussion of vagueness challenges to economic regulations).
 
 
 43
 In the present case, Wilmot has failed to carry the heavy burden of establishing that the brake regulation is impermissibly vague in all of its applications. Accordingly, we conclude that the vagueness challenge is without merit.
 
 III.
 
 44
 Accordingly, for the reasons stated, the decision of the Federal Mine Safety and Health Review Commission is AFFIRMED with regard to the violation of 30 C.F.R. Sec. 77.1605(b). We REVERSE the assessment of the civil penalty for violation of 30 C.F.R. Sec. 77.403a(a) and REMAND for a reconsideration of that penalty.
 
 
 
 *
 Honorable Ann Aldrich, Judge, United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Several witnesses testified about Schrock's personality. Marker testified that because Schrock was in charge of safety at the Wilmot mine, he had frequent contact with him. Marker testified that he and Schrock did not see eye-to-eye on very many things, that Schrock was often difficult to get along with, and that Schrock had the type of attitude which made it clear that he would do whatever he wanted whenever he wanted to do so. Bain agreed with this assessment
 
 
 [2]
 In its brief, Wilmot also appears to suggest that the finding of a violation of 30 C.F.R. Sec. 77.403a(a) is not supported by substantial evidence. The existence of this violation was not challenged before the full Commission, and thus has not been preserved for review. 30 U.S.C. Sec. 816(a)(1)
 
 
 [3]
 One other aspect of Wilmot's argument concerning penalty assessment deserves brief comment. Wilmot argues that the Commission erred in failing to assess the penalty in accordance with 20 C.F.R. Part 100. While these regulations govern the Secretary's initial proposal of a penalty, they do not govern the Commission's ultimate assessment of a penalty. See Sellersburg Stone Co. v. FMSHRC, 736 F.2d 1147, 1152 (7th Cir.1984)
 
 
 [4]
 No constitutional objection was raised in the proceeding below. 30 U.S.C. Sec. 816(a)(1) provides that objections not raised before the Commission shall be considered by the court only in "extraordinary circumstances." See Southern Ohio Coal Company v. Donovan, 774 F.2d 693 (6th Cir.1985), modified, 781 F.2d 57 (6th Cir.1986)