142 F.3d 1179
 1998 O.S.H.D. (CCH) P 31,558, 98 Cal. Daily
Op. Serv. 3146,
98 Daily Journal D.A.R. 4339
STILLWATER MINING COMPANY, Petitioner,
v.
FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION; Secretary
of Labor, Mine Safety and Health Administration
(MSHA), Respondents.
 CA No. 96-70805.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 3, 1998.
Decided April 28, 1998.
 
 James J. Gonzales, Denver, Colorado, for petitioner.
 Yoora Kim, U.S. Dept. of Labor, Office of Solicitor, Arlington, Virginia, for respondent.
 On Petition for Review of a Decision of the Mine Safety and Health Review Commission. FMSHRC Nos. West 95-539-RM, West 96-214-M.
 Before: BROWNING, SKOPIL, and O'SCANNLAIN, Circuit Judges.
 SKOPIL, Senior Circuit Judge:
 
 
 1
 Stillwater Mining Company petitions for review of a final order issued by the Federal Mine Safety and Health Review Commission assessing a civil penalty on Stillwater for violating a general safety regulation prohibiting use of equipment beyond its design capacity. Stillwater contends that the regulation is impermissibly vague, application of the regulation is arbitrary and capricious, and there is not substantial evidence to support a finding that the equipment was being used beyond its design capacity. We reject these contentions, deny the petition for review, and thereby affirm the sanction.
 
 I.
 
 2
 Stillwater operates an underground platinum mine near Nye, Montana. Ore from the mine is brought to the surface and dropped into chutes, each approximately 6 feet wide and 210 feet long. The chutes are constructed with bends that direct changes in the flow of the ore, thereby permitting the chutes to store up to 300 tons of material. At the bottom of each chute is a gate assembly that allows workers to funnel ore into waiting railcars. The gate assembly is supported by steel I-beams bolted to the chute with eight one-inch diameter bolts.
 
 
 3
 On August 21, 1995, two Stillwater employees were assigned to load ore from a chute into waiting railcars. The chute was full of ore that had not been emptied for four days; water had flowed into the chute, causing the material to turn into a sticky muck. The workers had considerable trouble keeping the material flowing down the chute. Using conventional methods--banging the gate assembly to vibrate the chute, applying water pressure to wash the material down the chute, and blasting the jammed material with explosives--the employees were able to free enough ore to fill three cars and part of a fourth.
 
 
 4
 When once again the material stopped flowing through the chute, the workers prepared to set another explosive blast in the chute to loosen the jam. As they approached the chute, however, the gate assembly suddenly detached, permitting ore and muck to flow unchecked from the chute. Both workers were knocked down by the impact of the ore; one escaped serious injury, the other was killed.
 
 
 5
 Acting pursuant to section 104(a) of the Federal Mine Safety and Health Act of 1977 (FMSHA), 30 U.S.C. § 814(a), the Mine Safety and Health Administration (MSHA) issued a citation alleging violations of various safety regulations. Following an evidentiary hearing, an Administrative Law Judge determined that Stillwater violated 30 C.F.R. § 57.14205, which provides that "[m]achinery, equipment, and tools shall not be used beyond the design capacity intended by the manufacturer, where such use may create a hazard to persons." In a written decision, the ALJ noted that the parties agreed the cause of the accident was "the failure of the bolts that held the chute gate assembly to the ... chute." Stillwater Mining Co. v. Secretary of Labor, 18 F.M.S.H.R.C. 1291, 1294 (1996). The ALJ specifically found that "the design capacity of the eight bolts holding the chute gate assembly was exceeded by the forces applied to those bolts before they failed." Id. at 1297. The ALJ rejected Stillwater's contention that bolts are not equipment for purposes of applying the regulation. Id. at 1296. Stillwater was assessed a civil penalty of $1500.
 
 II.
 
 6
 Stillwater invokes traditional constitutional due process, arguing that the regulation at issue "fails to provide specific guidance as to those conditions and circumstances for which the citation issued." We recognize, of course, that "due process requires fair notice of what conduct is prohibited before a sanction can be imposed." Newell v. Sauser, 79 F.3d 115, 117 (9th Cir.1996) (citing Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972)). Similarly, the Commission has held that a "safety standard must provide adequate notice of the conduct it prohibits or requires, so that the mine operator ... may act accordingly." Mine Safety and Health Admin. v. Freeman United Coal Mining, 18 F.M.S.H.R.C. 438, 448 (1996). The standard is objective; the "appropriate test is not whether the operator had explicit prior notice of a specific prohibition or requirement, but whether a reasonably prudent person familiar with the mining industry and the protective purposes of the standard would have recognized the specific prohibition or requirement of the standard." Id. (internal quotation omitted); see also Donovan v. Royal Logging Co., 645 F.2d 822, 831 (9th Cir.1981) (noting standard is what a reasonably prudent employer in the industry would have known).
 
 
 7
 Applying this objective standard, we agree with the ALJ that the regulation at issue is sufficiently specific to have provided notice to Stillwater. As the Secretary argues, "[a]ny reasonably prudent mine operator would recognize that when affixing two portions of a structure--in this case, the chute and the chute gate assembly--to store and funnel over 300 tons of ore along a steep decline, the component used to fasten one portion of the structure to the other should be sufficiently strong to withstand the amount of force anticipated." The regulation here plainly prohibited Stillwater from using any of its equipment beyond its design capacity when to do so may create a hazard to its workers. There was no due process violation.
 
 III.
 
 8
 Stillwater argues that section 57.14205 is inapplicable to the circumstances of this case. Specifically, Stillwater contends that neither the plain language of the regulation, nor agency guidelines, interpretations, policies, or enforcement citations permit MSHA to treat the failure of the chute gate assembly as a violation of section 57.14205. Stillwater fails to recognize, however, that "specific regulations cannot begin to cover all of the infinite variety of ... conditions which employees must face, and that by requiring regulations to be too specific courts would be opening up large loopholes allowing conduct which should be regulated to escape regulation." Freeman United Coal Mining Co. v. Federal Mine Safety & Health Review Comm'n, 108 F.3d 358, 362 (D.C.Cir.1997) (internal quotations omitted). Moreover, our review is limited to determining whether MSHA's decision to apply the regulation is arbitrary or capricious. See Phelps Dodge Corp. v. Federal Mine Safety & Health Review Comm'n, 681 F.2d 1189, 1192 (9th Cir.1982); see also Magma Copper Co. v. Secretary of Labor, 645 F.2d 694, 697 (9th Cir.1981) (noting that safety legislation "is to be liberally construed to effectuate the congressional purpose").
 
 
 9
 We conclude that it was not arbitrary or capricious to apply section 57.14205 to the event at issue. The focus of this case was clearly on the design capacity or strength of the bolts used to secure the gate assembly, not on the chute installation itself as Stillwater urges. It was plainly not improper for the ALJ to rule that "bolts are 'equipment' or part of 'equipment' within the meaning of section 57.14205." Stillwater, 18 F.M.S.H.R.C. at 1296. To rule otherwise could arguably have the effect of excluding all component parts of other equipment. As the Secretary observes, "to accept Stillwater's argument ... would allow mine operators to put together pieces of equipment without regard to ... structural integrity."
 
 
 10
 We also reject Stillwater's related arguments that section 57.14205 is inapplicable because there are specific regulations that pertain to chutes and there is no requirement that a chute even contain a gate. We agree that there are specific regulations pertaining to chutes that apply to Stillwater's operation. See, e.g., 30 C.F.R. §§ 57.9309, 57.9310. This does not mean, however, that other, more general safety regulations do not also apply. We also agree with Stillwater that there is no requirement that a chute installation have a chute gate. Nevertheless, as the Secretary correctly notes, "if a mine operator chooses to use a particular piece of equipment, he is required to use it within its intended design capacity." We conclude that MSHA's decision to apply section 57.14205 to this case was not arbitrary or capricious.
 
 IV.
 
 11
 Stillwater contends that there is no evidence that the chute gate assembly was being used beyond its intended design capacity. Stillwater points out that the chute had been used for more than five years without incident, during which time more than 200,000 tons had passed through the gate; that the chute assembly was regularly inspected by workers and by MSHA and no changes or adverse conditions had occurred; and that the chute itself was designed to avoid allowing the full weight of the ore on the gate assembly. Only the last point is relevant to the ALJ's finding that "the design capacity of the eight bolts holding the chute gate assembly was exceeded by the forces applied to those bolts before they failed." Stillwater, 18 F.M.S.H.R.C. at 1297. We will uphold that finding if it is supported by substantial evidence. See Miller Mining Co. v. Federal Mine Safety & Health Review Comm'n, 713 F.2d 487, 490 (9th Cir.1983).
 
 
 12
 Evidence established the design capacity of each bolt. See Stillwater, 18 F.M.S.H.R.C. at 1296-97. There was considerable dispute, however, as to the amount of force exerted by the wet ore onto those bolts. Stillwater contends that friction and resistance forces created by the design of the chute dissipate most of the weight of the ore prior to its reaching the gate assembly. Accordingly, Stillwater asserts there was insufficient evidence to establish that the weight of the ore on the gate assembly ever exceeded the design capacity of the bolts.
 
 
 13
 We agree with Stillwater that there is little evidence in the record to indicate how much force was exerted onto the gate assembly. The ALJ also agreed, acknowledging that "[t]he force applied to the bolts was dissipated by many factors," including "frictional forces, the affect [sic] of the change of direction ... of the chute, and the ... change of direction right at the chute gate." Id. at 1297. In fact, the ALJ stated that "it is impossible to calculate the force applied to the bolts prior to the accident." Id. The ALJ found, however, "[a]ll of these things ... irrelevant to the outcome of the case." Id. Rather, the ALJ concluded that "[w]hatever load was applied to the bolts on August 21, 1995, had to have exceeded the design capacity of the bolts; otherwise the chute would not have failed." Id. at 1297-98.
 
 
 14
 Stillwater protests this conclusion, arguing that it "could not possibly have detected any condition that would have given reason to believe that normal chute operation exceeded the functional design capacity of the chute assembly." In fact, Stillwater contends, it had no reason to believe "that the production design capacity of the chute gate assembly was ever exceeded." From this premise, Stillwater concludes that "[t]here is no evidence of knowing misuse of equipment."
 
 
 15
 Stillwater's knowledge and culpability, however, are not relevant to the determination of whether there was a violation. As we have observed, the FMSHA imposes "a kind of strict liability on employers to ensure worker safety." Miller Mining, 713 F.2d at 491; see also Freeman, 108 F.3d at 360 (The FMSHA imposes "strict liability for any violation of a mandatory safety standard."); Allied Prods. Co. v. Federal Mine Safety & Health Review Comm'n, 666 F.2d 890, 893 (5th Cir.1982) ("There is no basis for reading a fault standard into the statute."). This is reflected in the allocation of the burdens of proof. Here, MSHA carried its initial burden of establishing a prima facie case of violation. See Miller Mining, 713 F.2d at 490. The ultimate burden of persuasion then shifted to Stillwater to demonstrate compliance. Id. at 490-91. Stillwater offered no alternative explanation for the failure of the bolts or the gate assembly, and accordingly, failed to carry its burden of demonstrating compliance with the safety regulation. Thus, as in Miller Mining, Stillwater's argument "disintegrates with the allocation of the burden of proof." Id. at 490.
 
 V.
 
 16
 We reject Stillwater's contentions that the regulation at issue is unconstitutionally vague; that MSHA acted arbitrarily and capriciously in applying the regulation; and that there was insufficient evidence to support a finding of violation. We deny the petition for review, thus affirming the imposition of the civil penalty.
 
 
 17
 PETITION FOR REVIEW DENIED.
 
 
 18
 O'SCANNLAIN, Circuit Judge, dissenting.
 
 
 19
 Following an accident that killed one of Stillwater Mining Company's employees, an Administrative Law Judge ("ALJ") assessed a fine against Stillwater for violating a federal regulation that prohibits the use of equipment beyond its design capacity. See Stillwater Mining Co. v. Secretary of Labor, 18 F.M.S.H.R.C. 1291, 1298 (1996). The majority holds that the ALJ's conclusion is supported by substantial evidence; I respectfully disagree.
 
 
 20
 After Stillwater's employees bring ore up to the surface, they load it into long chutes. Located at the bottom of each chute is a gate assembly through which the ore is funneled into railcars. On August 21, 1995, the gate assembly on one of Stillwater's chutes collapsed, allowing ore to rush through the chute and to kill one of Stillwater's workers. At the time of the accident, the chute had been in operation for five years, during which time over 200,000 tons of ore had been pulled through without incident.
 
 
 21
 Following the accident, Stillwater was charged with violating 30 C.F.R. § 57.14205, which provides that "[m]achinery, equipment, and tools shall not be used beyond the design capacity intended by the manufacturer, where such use may create a hazard to persons." 30 C.F.R. § 57.14205. In determining that Stillwater had violated this regulation, the ALJ focused on eight one-inch diameter bolts that had been used to hold the collapsed gate assembly. See Stillwater Mining, 18 F.M.S.H.R.C. at 1296. Notably, the ALJ's focus on the bolts, as opposed to other components of the chute or gate assembly, was prompted at least in part by the fact that the bolts are "the only component of the chute and gate assembly for which there is any evidence regarding the design capacity intended by the manufacturer."[1] Id. Finding that Stillwater had used the bolts beyond their design capacity, the ALJ concluded that Stillwater had violated 30 C.F.R. § 57.14205 and assessed a $1500 fine. Id. at 1298.
 
 
 22
 Contrary to what the majority opinion concludes, the record does not contain substantial evidence to support the ALJ's finding that the bolts holding the gate assembly were used beyond their design capacity. Expert testimony established that the bolts were designed to withstand 408,408 pounds. Id. at 1296-97. The Mine Safety and Health Administration ("MSHA") failed to establish, however, what weight the bolts were actually subject to prior to the accident. Id. at 1297. Indeed, the ALJ found it "impossible to calculate the force applied to the bolts." Id.
 
 
 23
 Despite being unable to determine the force to which the bolts were subjected, the ALJ held that Stillwater had used the bolts in violation of 30 C.F.R. § 57.14205. The bolts must have been used beyond their design capacity, the ALJ concluded, because the chute gate assembly failed. Id. at 1297-98. The ALJ explained: "Whatever load was applied to the bolts on August 21, 1995, had to have exceeded the design capacity of the bolts; otherwise the chute would not have failed and Mr. Goode might not be dead."[2] Id. (emphasis added).
 
 
 24
 In defending the ALJ's decision, the majority incorrectly focuses upon the level of culpability required to prove violations of the Federal Mine Safety and Health Act ("FMSHA"). The majority contends that "the FMSHA imposes 'a kind of strict liability on employers to ensure worker safety.' "[3] Maj. Op. at 1184 (quoting Miller Mining Co. v. Federal Mine Safety & Health Review Comm'n, 713 F.2d 487, 491 (9th Cir.1983)). Applying this standard, the majority holds that the ALJ's conclusion that Stillwater violated 30 C.F.R. § 57.14205 is supported by substantial evidence. See Maj. Op. at 1183-1184.
 
 
 25
 However, even assuming arguendo that it were appropriate to impose strict liability for violations of the FMSHA, doing so would not help us to reach the majority's conclusion. The federal regulation at issue does not prohibit fatal accidents; rather, it prohibits the use of equipment beyond its design capacity. See 30 C.F.R. § 57.14205. The majority bases its reasoning upon a flawed conception of strict liability. Strict liability means that the plaintiff need not show recklessness, negligence, or any other mental state, see Winter v. G.P. Putnam's Sons, 938 F.2d 1033, 1035 (9th Cir.1991); it does mean that the plaintiff need not prove the elements of the underlying violation. Before we can hold Stillwater strictly liable for a violation of the regulation, we must decide whether a violation of that regulation occurred; that is, we must determine whether the bolts were used in excess of their design capacity. Apart from documenting the occurrence of the accident, the majority fails to point to any evidence of Stillwater's illegal use of the bolts.
 
 
 26
 The majority contends that Stillwater's argument--that the ALJ's ruling is not supported by substantial evidence--"disintegrates with the allocation of the burdens of proof."[4] Maj. Op. at 1184 (quoting Miller Mining, 713 F.2d at 490). The majority maintains that, by demonstrating that an accident occurred, MSHA "carried its initial burden of establishing a prima facie case of violation," thereby shifting the burden of proof to Stillwater. Id. Because Stillwater "offered no alternative explanation for the failure of the bolts or the gate assembly," it "failed to carry its burden of demonstrating compliance with the safety regulation." Id.
 
 
 27
 In support of its contention that the mere occurrence of an accident shifts the burden of proof with respect to whether a violation of 30 C.F.R. § 57.14205 has occurred, the majority inappropriately relies on our decision in Miller Mining. See Majority Opinion at 1184 (citing Miller Mining, 713 F.2d at 490). In Miller Mining, a mine was evacuated after a fire broke out in the main mine tunnel. See Miller Mining, 713 F.2d at 488. Acting pursuant to 30 U.S.C. § 813(k), the MSHA issued an order requiring all personnel to be withdrawn from the mine and giving the MSHA control over recovery efforts. See id. After the MSHA faltered in its efforts to fix the mine's ventilation fan (much to the dismay of local citizens), the mine was surreptitiously entered and the problem fixed. See id. at 489. We held that the MSHA's "uncontradicted evidence that the mine had been entered, and the ventilation system altered," was sufficient to establish "[a] prima facie case of violation." See id. at 491.
 
 
 28
 Our decision in Miller Mining is not controlling here. In Miller Mining, evidence that a mine had been entered was used to shift the burden of proof with respect to the alleged violation of an order which made such entry illegal. See id. Applying Miller Mining, we might reasonably hold that evidence that an accident occurred shifts the burden of proof with respect to a hypothetical regulation that simply prohibited accidents. However, it is quite another thing to hold, as my colleagues do, that mere evidence of an accident shifts the burden of proof with respect to a regulation that prohibits equipment from being used beyond its design capacity.
 
 
 29
 Apart from documenting the accident, the MSHA has failed to offer sufficient evidence that the bolts supporting the gate assembly were used beyond their design capacity in violation of 30 C.F.R. § 57.14205. Therefore, I would reverse the imposition of a civil penalty against Stillwater.
 
 
 30
 I respectfully dissent.
 
 
 
 [1]
 The ALJ also noted that the parties agreed that the "immediate cause" of the accident was "the failure of the bolts that held the chute gate assembly...." Stillwater Mining, 18 F.M.S.H.R.C. at 1294. Saying that "the failure of the bolts" holding the gate assembly was the "immediate cause" of the accident is analogous to saying that heart failure is the "immediate cause" of every human death
 
 
 [2]
 Besides Stillwater's alleged use of the bolts beyond their design capacity, there are other possible explanations for the incident. For example, any component of the chute or gate assembly other than the bolts could have been defectively designed or defectively manufactured. Absent more compelling evidence of a violation of 30 C.F.R. § 57.14205, Stillwater should not be required to establish the validity of any such alternative explanation. See infra at 4063-65
 
 
 [3]
 In support of its position, the majority cites Miller Mining Co. v. Federal Mine Safety & Health Review Comm'n, 713 F.2d 487, 491 (9th Cir.1983). However, the passage from Miller Mining that the majority quotes for the proposition that the FMSHA imposes strict liability merely describes the Fifth Circuit's decision in Allied Products Co. v. Federal Mine Safety & Health Review Comm'n, 666 F.2d 890 (5th Cir.1982). The relevant passage from Miller Mining states: "Imposing a kind of strict liability on employers to ensure worker safety, the [Fifth Circuit] pointed out there are no exceptions for fault, only harsher penalties for willful violations." Id. at 491
 
 
 [4]
 This allocation of burdens, according to the majority, "reflect[s]" the FMSHA's imposition of strict liability. Maj. Op. at 1184