**LOCAL 1605 AMALGAMATED TRANSIT UNION, AFL—CIO; June D. Owens; Lillie Pinero; Joseph F. Driscoll, Jr.; Joel R. Self; William H. Wright, Plaintiffs,**

v.

**CENTRAL CONTRA COSTA COUNTY TRANSIT AUTHORITY, Defendant.**

No. C 98–01633 CW.

United States District Court, N.D. California.

March 2, 1999.

William J. Flynn, Neyhart Anderson Freitas Flynn & Grosboll, San Francisco, CA, for Local 1605 Amalgamated Transit Union, June D. Owens, Joseph F. Driscoll, Jr., William H. Wright.

William J. Flynn, Neyhart Anderson Freitas Flynn & Grosboll, San Francisco, CA, Carolyn A. Anderson, Neyhart Anderson Freitas Flynn & Grosboll, San Francisco, CA, for Lillie Pinero, Joel R. Self.

Allison M. Woodall, Hanson Bridgett Marcus Vlahos & Rudy, San Francisco, CA, Lee Ann M. La France, Hanson Bridgett Marcus Vlahos & Rudy, San Francisco, CA, for Central Contra Costa County Transit Authority.

ORDER GRANTING DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' FLSA CLAIM AND GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON MMBA CLAIM

WILKEN, District Judge.

Amalgamated Transit Union, Local 1605 and five members of the Union's negotiat-

ing committee (collectively, Plaintiffs) seek compensation for time spent bargaining with Defendant Contra Costa County Transit Authority (CCCTA) during a lawful strike in January, 1998. Plaintiffs move for summary judgment on their claims that their time spent in negotiations was compensable under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and that CCCTA's failure to pay them for this time violated California's Meyers–Milias–Brown Act (MMBA), Cal. Gov't Code § 3500 *et seq.* CCCTA cross-moves for summary judgment, on the grounds that time spent negotiating is not compensable under FLSA, and that CCCTA's refusal to pay Plaintiffs neither changed the terms and conditions of Plaintiffs' employment, discriminated against Plaintiffs, nor otherwise violated the MMBA.

Applying the two-part test established in *Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944), the Court finds that Plaintiffs' collective bargaining activities are not compensable work activities under FLSA because those activities were neither controlled by nor conducted for the predominant benefit of CCCTA. The Court thus grants CCCTA's cross-motion for summary judgment as to Plaintiffs' claims under FLSA. The Court also finds, however, that CCCTA established a term of employment by compensating Plaintiffs for pre-expiration negotiations conducted during time they would not otherwise have been on duty, and that CCCTA unilaterally changed that condition in violation of § 3505 of the MMBA by refusing to compensate Plaintiffs for negotiations conducted during the strike.

## BACKGROUND

The facts of this case are not in dispute. The CCCTA is a public transit agency that provides bus service within central Contra Costa County. Each of the individual Plaintiffs in this action is a full-time bus operator for CCCTA. Full-time bus operators at CCCTA bid quarterly either for an assigned "run," which lasts approximately three months, or to work the "extra board," which consists of variable assignments left vacant by other operators. The length of an operator's run determines the minimum hours per day that he or she is paid.[1] Operators are paid time and one-half for all hours in excess of forty hours per week.

Since December, 1985, Amalgamated Transit Union, Local 1605 (the Union) has been the exclusive representative of all bus operators employed by CCCTA. CCCTA and the Union have entered into successive Memoranda of Understanding (MOU), each of which has covered a three year period of time. The most recent expired MOU covered the period from May, 1995 to midnight, January 27, 1998. In the period from November, 1997 to the MOU's expiration on January 27, 1998, bargaining teams for CCCTA and the Union met fifteen times to negotiate a new MOU to cover the period from 1998 to 2001.[2]

In addition to being represented by the Union, each of the individual Plaintiffs in this action was a member of the Union's negotiating committee. As such, Plaintiffs were involved in ____ of the fifteen pre-expiration negotiation sessions. Plaintiffs were relieved from their runs for each of the pre-expiration negotiation sessions, but were nonetheless paid the greater of their daily run pay or pay for the actual hours spent in negotiations. Owens Decl., ¶ 8. Plaintiffs received double their usual hourly rate for hours in excess of thirteen hours spent negotiating in one day. *Id.*

---

1. During the month of January, 1998, each of the individual Plaintiffs was assigned to a run of at least eight hours. Mr. Driscoll's run was eight hours and twenty-six minutes; Lillie Pinero's run was eight hours and thirty-seven minutes, except on Wednesdays when her run was ten hours and eighteen minutes.

2. Plaintiffs assert that pre-expiration negotiations occurred on November 11 and 25, 1997; December 2, 8, 9, 15, and 16, 1997; January 9, 13, 16, 19, 20, 23, 24, and 27, 1997; and January 9, 13, 16, 19, 20, 23, 24, and 27, 1998. Declaration of June Owens, filed October 30, 1998 (Owens Decl.), ¶ 7.

¶ 9. Plaintiffs assert that they were paid for all time spent negotiating prior to the strike, including hours after their work days and time on their days off.

On January 24, 1998, the Union notified CCCTA that it would strike if the parties could not agree on the terms of a new MOU by the time of the expiration of the 1995–1998 agreement. The parties negotiated the night of January 27, 1998 but were unable to reach an agreement. At 12:01 a.m., January 28, 1998, the Union bargaining team walked out of the negotiations, thus beginning a strike that lasted until February 13, 1998. During this period all bus operators refused to report to work, and CCCTA canceled all regularly scheduled public transportation services. No bus operator received any compensation during the strike.

The Union (including the negotiating committee) and CCCTA continued collective bargaining negotiations throughout the strike.[3] During the strike, however, none of the members of the negotiating committee was paid for any of the time spent in collective bargaining negotiations. CCCTA did not inform the Union that members of the Union's negotiating team would not be paid for the time they spent in negotiations during the strike.

On February 9, 1998, the Union and the CCCTA reached a tentative agreement on a new MOU. Neither the 1995–1998 nor the 1998–2001 MOU addressed the issue of pay for bargaining time. The new MOU was subsequently ratified by CCCTA's Board of Directors and the Union's membership, and bus operators returned to work on February 13, 1998. On February 26, 1998, the Union's counsel demanded that the Union officials be paid for time spent in negotiations. CCCTA's counsel indicated that CCCTA would not compensate the Union officials for time spent negotiating during the strike. On April 22, 1998 the Union and individual members of its negotiating committee filed this action, alleging that CCCTA's failure to pay them for their participation in negotiations during the strike violated FLSA and MMBA.

## DISCUSSION

### I. Legal Standard

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1288–89 (9th Cir.1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Eisenberg*, 815 F.2d at 1289. The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Intel Corp. v. Hartford Accident and Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### II. Fair Labor Standards Act

#### A. Standard for Compensable Activities Under FLSA

The FLSA requires that employers pay covered employees at least the federal

---

**3.** Plaintiffs assert that the negotiations were held on January 30, and February 2, 4, 6, 8, and 10. Owens Decl., ¶¶ 11, 12.

minimum wage for all hours worked, and time and one-half for all hours worked in excess of forty hours in a single work week. 29 U.S.C. §§ 206(a)(1), 207(a)(1). FLSA does not define what activities constitute "hours worked" under the act.[4] Although the federal regulations address whether a variety of other activities constitute hours worked under FLSA, the regulations do not address whether employees must be paid for collective bargaining activities. *See* 29 C.F.R. §§ 785 *et seq.*

In the absence of a statutory definition of what constitutes compensable work, the courts have developed standards to determine whether an activity constitutes work under FLSA. *See Leone v. Mobil Oil Corp.*, 523 F.2d 1153, 1162 (D.C.Cir.1975). Early Supreme Court cases interpreting FLSA established the general rule that an activity is work for FLSA's purposes if it is "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer." *See Tennessee Coal*, 321 U.S. at 598, 64 S.Ct. 698 (finding time spent by miners in transportation from the mine entrance to the work site compensable under FLSA); *Armour & Co. v. Wantock*, 323 U.S. 126, 132–33, 65 S.Ct. 165, 89 L.Ed. 118 (1944) (finding time spent waiting to work compensable under FLSA if the waiting time is spent "primarily for the benefit of the employer and his business"). The Court also counseled that the determination of whether an activity constitutes work depends on the circumstances of each case. *See e.g., Armour,* 323 U.S. at 133, 65 S.Ct. 165; *Skidmore v. Swift & Co.*, 323 U.S. 134, 136–37, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

In this case, CCCTA argues that because the collective bargaining negotiations conducted during the strike were nei-

ther controlled by nor primarily benefitted CCCTA, Plaintiffs' activities do not constitute compensable work under FLSA. Plaintiffs contend that FLSA's statutory and regulatory language suggests that custom or practice may in some cases be determinative of whether an activity constitutes work under FLSA and that custom or practice, not a control or primary benefit test, should apply to Plaintiffs' claims under FLSA. The Court disagrees.

■ Plaintiffs contend that the statutory definition of "hours worked" under FLSA suggests that an employer's custom or practice is persuasive. 29 U.S.C. § 203(*o*). However, § 203 does not adopt a broad custom or practice standard regarding the determination of hours worked. Rather, § 203 operates as a rule of exclusion by specifying that time spent changing clothes or washing at the start or finish of each work day is compensable under FLSA unless such payment is excluded by the express terms of, or by custom and practice under, a collective bargaining agreement.[5] *Id.* Section 203(*o*) thus instructs that when an otherwise compensable activity under FLSA is treated as non-compensable under a collective bargaining agreement, the agreement governs.

Section 203(*o*) provides little support for Plaintiffs' theory that evidence of custom or practice is sufficient to create an obligation of compensation under FLSA. First, collective bargaining negotiations during a strike are not analogous to the routinized activities designated as compensable as a matter of law under § 203(*o*). Second, the instant case does not involve a conflict between a statutory duty to provide payment and a negotiated agreement

---

**4.** The term "hours worked" appears in FLSA only once, in the definitions section, at 29 U.S.C. § 203(*o*), as discussed later in this order.

**5.** Title 29 U.S.C. § 203(*o*) reads as follows: "Hours Worked. In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed,

there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom and practice under a bona fide collective bargaining agreement applicable to the particular employee."

specifying that an otherwise applicable obligation to pay does not apply.

Plaintiffs likewise contend that 29 C.F.R. § 785.42, which governs the adjustment of grievances under FLSA also suggests that custom or practice under a collective bargaining agreement determines whether collective bargaining activities constitute work under FLSA. Section 785.42, which was promulgated after the first enunciation of the judicially-created standard, provides as follows:

> Time spent in adjusting grievances between an employer and employees during the time the employees are required to be on the premises is hours worked, but in the event a bona fide union is involved the counting of such time will, as a matter of enforcement policy, be left to the process of collective bargaining or to the custom or practice under the collective bargaining agreement.

Section 785.42 is an exception to FLSA's judicially developed standard, and establishes a default rule for non-unionized employees that time spent adjusting grievances is compensable. The regulations create a different exception for unionized employees by leaving the determination of whether or not time spent adjusting grievances is compensable under FLSA to the collective bargaining process. Plaintiffs contend that because § 785.42 refers to the persuasive authority of custom or practice, but does not mention the two-part test first introduced in *Tennessee Coal,* the Court should look to custom or practice to determine whether Plaintiffs' negotiating activities during the strike constituted work under FLSA.

A determination of whether collective bargaining activities are compensable under FLSA is not sufficiently analogous to the adjustment of grievances brought by individual unionized employees to justify supplanting the generally applicable stan-dard of what constitutes work under FLSA with the custom or practice test established in § 785.42 as an exclusionary rule. Given the distinction between the adjustment of grievances covered by § 785.42 and the activities at issue in this case, the Court applies the rule first enunciated in *Tennessee Coal* to determine whether Plaintiffs' activities are compensable under FLSA.

**B. Primary Benefit and Control Test**

 Courts have consistently required that, to constitute work under FLSA, an activity must be controlled or required by the employer, and pursued necessarily or primarily for the employer's benefit.[6] *See Tennessee Coal,* 321 U.S. at 598, 64 S.Ct. 698; *Armour,* 323 U.S. at 132, 65 S.Ct. 165 (finding time spent waiting for work compensable if predominantly for the benefit of the employer and its business); *Owens v. Local No. 169,* 971 F.2d 347, 355 (9th Cir.1992) (applying the predominant benefit test used in *Armour* and finding that employees were not entitled to overtime for time they were on call because they remained free to engage in personal activities); *Reich v. Southern New England Telecommunications Corp.,* 121 F.3d 58, 64–65 (2nd Cir.1997) (adopting a "predominant benefit" test and finding meal periods compensable under FLSA when employees on break perform duties predominantly for the benefit of the employer).

In this case, CCCTA neither required nor controlled Plaintiffs' collective bargaining activities. CCCTA could not select the Union's bargaining team, dictate the extent of Union participation in negotiations, nor discipline Union officials for not participating. *See Leone,* 523 F.2d at 1163 (employee time spent accompanying OSHA inspector in workplace inspection not compensable under FLSA in part because employer neither selected nor con-

---

**6.** Plaintiffs contend that the two requirements in *Tennessee Coal* are distinct and that the satisfaction of one or the other prong is sufficient. Because the Court finds that Plaintiffs do not satisfy either of the requirements in *Tennessee Coal,* it does not reach the question of whether one or both of *Tennessee Coal's* requirements must be met for an activity to be considered work under FLSA.

trolled conduct of employee representative); *Chamber of Commerce v. OSHA,* 636 F.2d 464, 467 (D.C.Cir.1980) (same).

Moreover, any exertion of control by CCCTA over the collective bargaining process would run afoul of MMBA's requirement that employees be able to meet and confer over the terms and conditions of their employment. Cal. Gov't Code §§ 3500, 3502. Finally, although Plaintiffs contend that CCCTA controlled the negotiations because it could have refused to negotiate and hired replacement workers, Plaintiffs had the same option of refusing to negotiate with CCCTA. Given these constraints, CCCTA did not exercise the type of unilateral control over Plaintiffs' activities present in *Tennessee Coal* and its progeny.

The second inquiry is whether Plaintiffs' collective bargaining activities were conducted primarily for the benefit of CCCTA.[7] Plaintiffs contend that their ongoing collective bargaining negotiations led to the end of the strike and the formation of a new collective bargaining agreement, both of which benefitted CCCTA. Plaintiffs further assert that the fact that CCCTA paid for all negotiating activities prior to the strike, including sessions conducted on Plaintiffs' time off, indicates that these activities were valued by and of benefit to CCCTA. CCCTA contends, however, that the negotiations were for the primary benefit of Plaintiffs and the member employees they represented, and that any incidental benefits that may have accrued to CCCTA as a result of the negotiations do not satisfy the predominant benefit standard under FLSA. The Court agrees.

At least one court has found that collective bargaining negotiations do not meet the requirement under *Tennessee Coal* that the activity be pursued necessarily and primarily for the employer's benefit. *See NTEU v. Gregg,* 26 WH Cases 754, 1983 WL 31224 (D.D.C.1983). In *Gregg,* employee negotiators for a union sought overtime compensation under FLSA and the federal Civil Service Reform Act for labor negotiations conducted on the weekend, when they were not otherwise on duty. The court applied the two-part test in *Tennessee Coal* and concluded that the employees' activities "cannot be considered primarily for the benefit of the agency. Individual plaintiffs' responsibilities during these negotiations were to represent ... employees in the collective bargaining." *Id.* at 755. The court also held that the plaintiffs were not entitled to overtime under the Civil Service Reform Act because they were not otherwise on duty at the time of the activity. *Id.* at 757.

Plaintiffs contend that because *Gregg* did not address practice or custom, it is of little precedential value. Plaintiffs further assert that *Gregg* can be distinguished from the instant case because the primary issue in *Gregg* was whether employees could receive overtime when they were not on duty, whereas in this case CCCTA paid Plaintiffs for pre-expiration negotiations without regard to their duty status. Nevertheless, this Court applies the rule in *Tennessee Coal,* and the finding in *Gregg* that union negotiations do not constitute a compensable activity under FLSA because they are not for the employer's benefit is therefore squarely on point. The Court thus finds, as did the court in *Gregg,* that Plaintiffs' participation in collective bargaining negotiations during the strike was not for the primary benefit of CCCTA.[8]

7. Plaintiffs assert that under *Treece v. Little Rock,* activities are compensable under FLSA if the employer derives significant benefit from the activity. 923 F.Supp. 1122, 1127 (E.D.Ark.1996). The opinion in *Treece* does not announce a new standard. Rather, the court was explaining that the applicable test did not require that the employer be the "sole beneficiary" of the activity. *Id.* at 1127. The court in *Treece* supported this assertion by citing *Henson v. Pulaski County Sheriff Dept.,* which applied the predominant benefit standard. 6 F.3d 531 (8th Cir.1993).

8. Cases arising under the Civil Service Reform Act provide insight into the way the courts have treated collective bargaining activities under statutes similar to the MMBA. These cases do not establish a rule for the treatment of collective bargaining under FLSA, however, given that FLSA's provisions

Nor are the ancillary benefits that may have accrued to CCCTA sufficient to establish that Plaintiffs' activities are compensable under FLSA. Although CCCTA may have benefitted from Plaintiffs' ongoing negotiations by the cessation of the strike and development of the new MOU, these secondary benefits do not establish that Plaintiffs represented CCCTA's interests or conducted ongoing negotiations predominantly for CCCTA's benefit. *See Leone*, 523 F.2d at 1163 ("Many activities which may increase employee effectiveness and thus benefit the employer are not worktime activities under FLSA").

In *Leone*, the District of Columbia Circuit ruled that hours spent by employees accompanying OSHA inspectors in workplace inspections were not hours worked under FLSA because such activities were neither controlled by the employer nor conducted for the employer's primary benefit. *Id.* The court rejected the argument that benefits that accrued to the employer satisfied FLSA's primary benefit test, and instead found that, although the employer ultimately benefitted from improvements in industrial safety resulting from OSHA inspections, the employees were the primary beneficiaries of the walkaround provisions.[9] *Id.* at 1163–64.

CCCTA may have received incidental benefits from Plaintiffs' ongoing negotiating activities. However, the fact that CCCTA compensated Plaintiffs for negotiations conducted prior to the strike does not mean that Plaintiffs' activities after the strike were pursued primarily for CCCTA's benefit. The fact that CCCTA compensated Plaintiffs for pre-expiration negotiations suggests that CCCTA valued Plaintiffs' activities, and even, as discussed below, that CCCTA had a policy or practice of payment for negotiating activities. However, it is not evidence that Plaintiffs conducted those activities predominantly for CCCTA's benefit, or that CCCTA was the primary beneficiary of Plaintiffs' activities. The Court finds in this case that, as in *Leone* and under FLSA's standards, Plaintiffs and the member employees they represented were the primary intended and actual beneficiaries of Plaintiffs' collective bargaining activities.

Plaintiffs have not raised triable issues of fact as to whether the collective bargaining activities they conducted during the strike were controlled by CCCTA or were conducted predominantly for the benefit of CCCTA. Thus, Plaintiffs' activities are not compensable work under FLSA, pursuant to the standard in *Tennessee Coal*. The Court thus grants CCCTA's cross-motion for summary judgment on Plaintiffs' claims under FLSA.

## III. Meyers–Milias–Brown Act

### A. Causes of Action

■ Plaintiffs' State law claims under the MMBA arise from the same facts as Plaintiffs' claims under FLSA. Pursuant to 28 U.S.C. § 1367(a), the Court may, and does, exercise supplemental jurisdiction over Plaintiffs' State law claims.

Plaintiffs allege that CCCTA's refusal to compensate Plaintiffs for post-expiration negotiations violated the MMBA by (1) executing a unilateral change in the terms and conditions of Plaintiffs' employment, in violation of the meet and confer requirement contained in § 3505 of the Act, (2) discriminating against Plaintiffs for engaging in protected activities, in violation of § 3506, and (3) failing to provide Plaintiffs with adequate release time without loss of compensation for negotiating activities under § 3505.3. The Court finds that CCCTA established a policy of paying for all of Plaintiffs' negotiating activities, and unilaterally changed that policy in violation of § 3505 by failing to meet and confer with Plaintiffs, or other representatives, prior

differ substantially from those of the Civil Service Reform Act.

**9.** The plaintiffs in *Leone* had at one time been paid for their participation in OSHA inspec-

tions. The court in *Leone* did not suggest, however, that receiving compensation for an activity establishes that it is for the primary benefit of the employer.

to terminating such payment. Because the Court has determined that CCCTA's actions violated the MMBA, it need not, and does not, consider Plaintiffs' additional claims for compensation under §§ 3506 and 3505.3 of the Act.

### B. Unilateral Change in Terms and Conditions of Employment

The MMBA governs labor relations for local public employers throughout California, including the CCCTA. *See* Cal. Gov't Code § 3500 *et seq.* Section 3505 of the Act requires that employers "meet and confer in good faith regarding wages, hours, and other terms and conditions of employment" with employee representatives "prior to arriving at a determination of policy or course of action." Cal. Gov't Code § 3505.[10]

CCCTA argues that it did not have a policy of compensating employee union negotiators during a strike because a strike had not previously occurred, no such arrangement was specified in the parties' previous MOU, and any payment provided for Plaintiffs' negotiating activities was statutorily required under § 3505.3 of the MMBA. CCCTA contends that, because it did not have a policy of compensation, it did not unilaterally change the terms and conditions of Plaintiffs' employment in violation of the MMBA.

It is undisputed that no strike had previously occurred and that the parties' collective bargaining agreement did not include a provision which addressed specifically whether employee union negotiators would be compensated for negotiations conducted during a strike. However, prior to the strike CCCTA had paid Plaintiffs for all time spent in negotiations, including overtime hours and hours spent negotiating during Plaintiffs' days off. *See e.g.* Declaration of Carolyn A. Anderson, filed November 20, 1998 (Anderson Decl.), Exhs. F, G, H. Such compensation was not within

the mandate of § 3505.3 of the MMBA, which requires only that employee union representatives be compensated for time spent in negotiations during their regularly scheduled work hours. Cal. Gov't Code § 3505.3. Thus, CCTA voluntarily compensated Plaintiffs for pre-expiration negotiations conducted during time when Plaintiffs were not regularly scheduled to work.

The fact that CCCTA compensated Plaintiffs for such pre-expiration negotiations indicates that CCCTA was paying Plaintiffs for their negotiating activities, rather than merely providing wage replacement for time that Plaintiffs otherwise would have been on duty. By so doing, CCCTA established a practice of providing such compensation. It is undisputed that CCCTA discontinued this practice after the strike began, and that CCCTA did so without informing or discussing with Plaintiffs the fact that they would not be compensated for their time.

The failure by an employer to meet and confer with employee union representatives prior to making a unilateral change in the terms or conditions of employment is a per se violation of the duty to meet and confer in good faith. *See Vernon Fire Fighters v. City of Vernon,* 107 Cal.App.3d 802, 823, 165 Cal.Rptr. 908 (1980); *San Joaquin County Employees Ass'n v. City of Stockton,* 161 Cal.App.3d 813, 818, 207 Cal.Rptr. 876 (1984). It is not fatal to a claim that the particular practice is not formalized in the written collective bargaining agreement or MOU. *See San Francisco Fire Fighters, Local 798 v. Board of Supervisors,* 3 Cal.App.4th 1482, 1489, 5 Cal.Rptr.2d 176 (1992).

CCCTA argues that, even if it compensated Plaintiffs for pre-expiration negotiations, it was not required to finance a strike against it. CCCTA also contends that, under *Simplex Wire & Cable Co.* and *General Electric Co.,* it was not required to

---

**10.** The MMBA parallels the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* Courts may therefore rely on federal, as well as State, precedent in interpreting the

MMBA's meet and confer requirement. *See San Francisco Fire Fighters, Local 798 v. Board of Supervisors,* 3 Cal.App.4th 1482, 1491, 5 Cal.Rptr.2d 176 (1992).

confer with Plaintiffs prior to stopping wage and related payments during the strike because Plaintiffs were not performing their jobs. *See Simplex Wire & Cable Co.*, 1979 WL 9983, 245 NLRB 543 (1979) (finding employer may unilaterally cease benefits to striking employees); *General Electric Co.*, 80 NLRB 510 (1948) (it is "axiomatic" that employers are not required "to finance an economic strike against it by remunerating the strikers for work not performed").

Plaintiffs did not perform their jobs as bus operators during the strike, nor are they requesting compensation for that undone work. Instead, Plaintiffs participated in a series of negotiations during time they were not otherwise working, as they had done before the strike, and for which they had received compensation prior to the strike. Thus, neither *Simplex* nor *General Electric* controls in this case. CCCTA failed to meet and confer either with Plaintiffs or other union representatives prior to terminating payment for Plaintiffs' negotiating activities. The Court finds that this failure constitutes a violation of § 3505 of the MMBA. The Court therefore does not consider Plaintiffs' other claims for compensation under §§ 3506 and 3505.3 of the MMBA.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment on their claims under FLSA is DENIED. Plaintiffs' motion for summary judgment on their claim under § 3505 of the MMBA, Cal. Gov't Code § 3505, is GRANTED and Defendant's cross-motion for summary judgment as to that claim is DENIED. Finally, the Court denies as moot Plaintiffs' motion, and Defendant's cross-motion, for summary adjudication of Plaintiffs' claims under § 3506 and § 3505.3 of the MMBA.